720 So.2d 1244 (1998)
LIFEMARK HOSPITALS, INC.
v.
ST. JUDE HOSPITAL OF KENNER, LA., INC., St. Jude Medical Office Buildings Limited Partnership, St. Jude Nursing Home Limited Partnership, Economical Pharmacies, Inc., John A. Liljeberg, Jr. and Robert L. Liljeberg, Sr.
No. 98-CA-476.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 1998.
*1245 Joseph N. Mole, Kenneth A. Mayeaux, New Orleans, Don C. Gardner, Harahan, for Appellant.
Hans J. Liljeberg, J. Patrick Connick, Metairie, Jacob J. Amato, Jr., Gretna, for Appellees.
Before DUFRESNE and CANNELLA, JJ., and NESTOR L. CURRAULT, Jr., J. Pro Tem.
CANNELLA, Judge.
Plaintiff, Lifemark Hospitals, Inc., appeals from a judgment granting an exception of prematurity filed by defendants, John Liljeberg, Robert Liljeberg, St. Jude Hospital of Kenner, La., Inc. (St.Jude), St. Jude Medical Office Buildings Limited Partnership (St. Jude MOB), St. Jude Nursing Home No. 1, a Louisiana Limited Partnership (St. Jude Nursing Home) and Economical Pharmacies, Inc. (Economical) and dismissing its Petition for Declaratory Relief and Revocation against defendants. We affirm.
Plaintiff and St. Jude executed a promissory note in March of 1983 in the amount of $44,236,450 for construction of the St. Jude Hospital (the hospital) in Kenner, Louisiana. The note was extended and renewed in 1991 in the amount of $44,873,550.40. In 1993, in another matter, Travelers Insurance Company (Travelers) obtained a judgment and judicial lien against the hospital. On October 28, 1994, the hospital was seized and sold at public auction to Lifemark Hospitals of Louisiana, Inc., a subsidiary of plaintiff, for $26,000,000. The balance due to plaintiff on the note on that day was $38,933,517.27. Of the $26,000,000 bid at the auction, $7,786,083.33 was used to pay costs and the judgment in favor of Travelers. The remainder was applied to the plaintiff's promissory note.
Sometime thereafter, plaintiff sued St. Jude in federal court for the balance due under the note. St. Jude contested the matter and counterclaimed against the plaintiff. These issues were tried in United States District Court for the Eastern District of Louisiana in June and July of 1997. The matter was taken under advisement. To date, no judgment has been rendered.
On September 29, 1997, plaintiff filed this action for Declaratory Relief and Revocation in the Twenty-Fourth District Court for the Parish of Jefferson, State of Louisiana. The petition alleges that St. Jude has been insolvent since August of 1993, when it filed for Chapter 11 protection of the U.S. Bankruptcy Code. The petition states that the bankruptcy petition was dismissed in August of 1994 and that the only known assets of any value owned by St. Jude and St. Jude MOB consist of four parcels of real estate in the original tract of land that was subdivided for the construction of the hospital and the medical office building. Further, St. Jude owns St. Jude MOB. These parcels, however, were leased on the same day that Travelers foreclosed on the hospital. The leases were made to Economical for a term of 30 years for the consideration of $100 (parcel C and D) and $200 (parcel B-1 and B-2) per year. Plaintiff's petition contends that the leases were executed for the sole purpose of frustrating plaintiff's right to collect on any judgment on the amounts owed under the promissory note. Plaintiff asserts that if it receives a judgment in the pending federal lawsuit, the leases deprive the parcels of land of any value as a result of their terms and rentals amounts.
The petition next asserts that the Liljeberg brothers own 50% of Economical and Liljeberg Enterprises, Inc. (LEI), that LEI *1246 owns 100% of St. Jude, that St. Jude is the general partner and owns 60% of St. Jude MOB, that the Liljebergs each own 20% of and are limited partners of St. Jude MOB, that St. Jude is the general partner and owns 98% of St. Jude Nursing Home and that the Liljebergs each own .7% and are limited partners of St. Jude Nursing Home. As a result, the petition seeks a declaration that all of these entities constitute a single business enterprise and that the leases are an example of the Liljebergs attempt to shuffle the assets of the corporations in such a way as to benefit them personally, to the detriment of the legitimate creditors. The petition alleges also that the rental prices are so out of proportion to the value of the leasehold rights that the leases should be declared void for that reason. The petition concludes that the effect of the leases, therefore, is to increase the insolvency of St. Jude and for this reason, pursuant to La.C.C. art 2036, plaintiff seeks a judgment revoking the leases.
On October 28, 1997, defendants filed various exceptions, including the dilatory exception of prematurity. A hearing on the exceptions was held on December 22, 1997. On January 5, 1998, the trial judge rendered a judgment granting the exception of prematurity and finding the other exceptions moot.
On appeal, plaintiff asserts that the trial judge erred in granting the exception of prematurity.
Plaintiff contends that the trial judge determined that the petition was premature because the federal district court judgment was still pending and plaintiff did not have a judgment against defendant for the amount of the claimed debt. Plaintiff asserts that the revocatory action is not dependent upon the debt being liquidated to judgment, citing La.C.C. art.2036 and the comments to the article. In addition, plaintiff asserts that the petition for declaratory judgment on the "single business entity" issue is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," citing Abbott v. Parker, 259 La. 279, 249 So.2d 908 (La.1971). Plaintiff argues that a judgment is not necessary before the right arises to obtain a declaratory judgment on this issue, as this is another way to prevent defendants from "squirreling away" St. Jude's assets. Plaintiff cites: In re New Orleans Train Car Leakage Fire Litigation, 96-1677 (La.App. 4th Cir. 3/5/97), 690 So.2d 255 where plaintiffs simultaneously pursued a tort action against a subsidiary corporation and the single business enterprise action against the parent corporation.
Defendants respond that the suit is premature since the pending federal suit involves a complicated reconventional demand for damages and any judgment in defendants' favor may off-set all or part of the debt. Thus, it is not ceratin that the debt is or will be owed. Defendants cite Faucheaux v. Prytania Medical Complex Owners Association, 93-2042 (La.App. 4th Cir. 8/17/94), 642 So.2d 242. There, plaintiffs who slipped and fell in a leased parking garage filed personal injury actions and the lessor sought indemnity and sought to compel the lessee to defend. The court found that any decision rendered at that time would be premature and perhaps an impermissible advisory opinion. Faucheaux v. Prytania Medical Complex Owners Ass'n, 642 So.2d at 245.
La.C.C. art.2036 provides that, "An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency. Comment (f) following C.C. art.2036 states that, anteriority of the debt and insolvency of the debtor are prerequisites to the revocatory action, in accordance with traditional doctrine; however, an obligee's claim does not have to be liquidated to judgment to be considered an anterior debt. Once a creditor alleging insolvency of its debtor shows the amount of his debts, it is then incumbent upon the debtor to show that he has retained assets of an equal or greater value." Central Bank v. Simmons, 595 So.2d 363, 366 (La.App. 2nd Cir.1992).
There is no requirement that the revocatory action plaintiff have a judgment against the debtor in order to proceed. However, the matter may still be premature if it is clear that the debtor cannot show the amount of the debt. In this case, plaintiff cannot show the amount of the debt because *1247 that is an issue in the federal lawsuit which has not been reduced to judgment as of the date of the trial and this appeal. Thus, we find that the trial judge did not err in granting the exception of prematurity relative to the revocatory action.
Plaintiff next asserts that the trial judge erred in finding the petition for declaratory judgment on the single business enterprise issue also premature.
In American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993), the court set out the requirements for a declaratory judgment:
Without doubt, for a court to entertain an action for declaratory relief, there must be a justiciable controversy and the question presented must be real and not theoretical... Courts are not empowered to render advisory opinions on moot or abstract issues of law ... Consequently, a declaratory action cannot generally be maintained unless it involves some specific adversary question or controversy asserted by interested parties and based on existing state of facts ... Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely ... A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency which may or may not arise ... (Citations Omitted)
The single business enterprise concept was discussed in the case cited by plaintiff, In re New Orleans Train Car Leakage Fire Litigation, 690 So.2d at 257, as follows:
Corporations are generally recognized as distinct legal entities, separate from the individuals who comprise them ... The legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it a mere instrumentality or adjunct of another corporation. If one corporation is wholly controlled by another, the fact that it is a separate entity does not relieve the latter from liability. In that situation, the former corporation is considered to be the alter ego or business conduit of the latter. Courts can pierce the veil of a corporation in order to reach the "alter egos" of the corporate defendant ...
Where two or more corporations operate a single business, the courts have been unwilling to allow affiliated corporations that are not directly involved to escape liability simply because of the business fragmentation ... In addition to using a "piercing the veil" theory to disregard a corporate identity, the "single business enterprise" or "instrumentality" theory has been employed to extend liability beyond a separate entity ... [1]
*1248 In this case, the issue is based on a liability of defendants, which is a contingency which may or may not arise. It is not based on the existing state of facts. Thus, we find that the trial judge did not err in finding premature this action for declaration of rights.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by appellant.
AFFIRMED.
NOTES
[1] Citing Green v. Champion Insurance Company, 577 So.2d 249, 257-258 (La.App. 1st Cir.1991), writ denied, 580 So.2d 668 (La.1991), the Fourth Circuit continued:

In Green, the court discussed the factors to be considered in the application of a "single business enterprise" theory.
When determining whether a corporation is an alter ego, agent, tool or instrumentality of another corporation, the court is required to look to the substance of the corporate structure rather than its form. The following factors have been used to support an argument that a group of entities constitute a "single business enterprise":
1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2. common directors or officers;
3. unified administrative control of corporations whose business functions are similar or supplementary;
4. directors and officers of one corporation act independently in the interest of that corporation;
5. corporation financing another corporation;
6. inadequate capitalization ("thin incorporation");
7. corporation causing the incorporation of another affiliated corporation;
8. corporation paying the salaries and other expenses or losses of another corporation;
9. receiving no business other than that given to it by its affiliated corporations;
10. corporation using the property of another corporation as its own;
11. noncompliance with corporate formalities;
12. common employees;
13. services rendered by the employees of one corporation on behalf of another corporation;
14. common offices;
15. centralized accounting;
16. undocumented transfer of funds between corporations;
17. unclear allocation of profits and losses between corporations; and
18. excessive fragmentation of a single enterprise into separate corporations.
These factors are similar to factors that have been used in Louisiana "piercing the veil" cases. This list is illustrative and is not intended as an exhaustive list of relevant factors. No one factor is dispositive of the issue of "single business enterprise." (Citations Omitted)
In re New Orleans Train Car Leakage Fire Litigation, 690 So.2d at 257.