hLEON A. CANNIZZARO, JR., Judge.
The appellants filed a petition for declaratory judgment that was dismissed by the trial court on an exception of prematurity. The appellants are now appealing the trial court’s decision to dismiss their case.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
The Edgar Benjamin Fontaine Testamentary Trust (the “Trust”) owns and leases the square of ground in New Orleans, Louisiana bounded by North Peters, St. Louis, Clay and Conti Streets and all of *676 the improvements on that ground, including the shopping center known as Jackson Brewery (the “Leased Premises”). The Trust leases the Leased Premises to Jackson Brewery Marketplace Limited (the “Lessee”) pursuant to a Lease of Property dated December 27,1949, having a ninety-nine year term (the “Lease”).
The Trust and James Louis Reynolds, Jr., the current trustee of the Trust (the “Trustee”), alleged that the Lessee and Jackson Brewery Marketplace, Inc., the corporate general partner of the Lessee (the “Corporation”), had violated Article 10 of the Lease, which reads in pertinent part as follows:
Is.At all times during the term of this lease ... Lessee will maintain, at its own cost and expense, but in the names of Lessor and Lessee, as their respective interests may appear, fire and extended coverage insurance on said building or buildings ... with loss-payable clause in favor of The Hibernia National Bank in New Orleans, as Trustee [the original lessor].... All sums arising by reason of loss under said insurance policies shall be payable to said Trustee [the original lessor], but shall be available to Lessee for the reconstruction or repair of any building or buildings injured or destroyed....
The Trust and the Trustee also alleged that the Lessee and the Corporation had violated Article 17 of the Lease, which provided in pertinent part as follows:
Lessee, during the term of this lease, may assign, sub-lease, convey, transfer, or mortgage, its leasehold estate or this lease, without the written consent of the Lessor; but no such assignment, sublease, conveyance, transfer or mortgage shall affect or lessen, in any way or to any degree, the liabilities, obligations or responsibilities, hereunder of the Lessee....
On January 16, 1987, the Lessee had executed a collateral mortgage (the “Collateral Mortgage”) on the Lessee’s leasehold interest under the Lease. Section 1.01 of Article 1 of the Collateral Mortgage provided that the mortgagor agreed to keep the Leased Premises insured against all risks of loss or damage under policies payable to the mortgagee. The Collateral Mortgage also provided that the mortgagee should receive the money payable under the policies for the loss of property. The mortgagee had the option under the Collateral Mortgage either to retain the insurance proceeds and apply them to the payment of the debts secured by the Collateral Mortgage or to pay the mortagor the proceeds for the purpose of repairing and restoring the mortgaged property.
On April 12, 2002, the Trust and the Trustee sent a letter by certified mail to the Lessee notifying it of an alleged default under the Lease. The Trust and the Trustee alleged that the Lessee and the Corporation were in default under Article 17 of the Lease on the grounds that the insurance provisions of the Collateral | .¡Mortgage violated the insurance provisions of the Lease. Consequently, the execution of the Collateral Mortgage affected the obligations of the Lessee and the Corporation under the Lease. The notice of default was provided to the Lessee and the Corporation in accordance with Article 11 of the Lease.
In addition to providing the method of giving notice of a default, Article 11 provided that if an event of default continued for fifteen days after written notice of a default had been given, the Trust and the Trustee could declare the unpaid installments of the Lease due and payable or cancel the Lease immediately, all without putting the lessee in default. Article 11 of *677 the Lease further provided, however, in pertinent part:
In case of any event of default ... the Lessee shall have the right to suspend the effect of such event of default, including the right of the Lessor to declare all of the unpaid installment of rent at once due and exigible or to cancel this lease and immediately expel the Lessee ... by depositing ... to the credit of Lessor, its successors or assigns, within fifteen (15) days after written notice of such an event of default is delivered by the Lessor to the Lessee, the rental, which, under the terms of this lease, will be due for the next twenty-four (24) months-
Article 11 further provided that if the lessee deposited the rental as permitted by that article, the lessor could not accelerate the maturity of the rent, cancel or terminate the lease, or expel the lessee. The lessor could, however, exercise any other legal rights and remedies available to it.
On May 2, 2002, the Lessee responded to the April 12 letter, denying that there was a default under the Lease. As a precautionary measure, however, the Lessee enclosed with the May 2 letter a check for the next twenty-four months’ rent so that the default suspension provisions of Article 11 of the Lease would be triggered. The advance rental check enclosed with the May 2 letter was accepted by the Trust and the Trustee.
|4On May 8, 2002, the Trust and the Trustee filed suit against the Lessee and the Corporation requesting the trial court to make all unpaid installments on the Lease immediately due and payable or, alternatively, to cancel the Lease and expel the lessee under the Lease. Additionally, the Trust and the Trustee requested a declaratory judgment determining the obligations of the Lessee and the Corporation to the Trust and the Trustee under the Lease and to the mortgagee under the Collateral Mortgage.
The Trust and the Trustee have recognized that the default suspension provisions of Article 11 of the Lease have been triggered. Therefore, at this time the Trust and the Trustee only seek the declaratory judgment requested in their lawsuit against the Lessee and the Corporation.
On June 28, 2002, the Lessee and the Corporation filed a peremptory exception of no right of action and a dilatory exception of prematurity. A hearing on these two exceptions was heard on September 6, 2002. On September 17, 2002, the trial court rendered a judgment denying the exception of no right of action and granting the exception of prematurity. The Trust and the Trustee are now appealing the trial court decision granting the exception of prematurity.
STANDARD OF REVIEW
This Court has stated with respect to the standard of review of a declaratory judgment action that “[o]n appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment.” In re Peter, 98-0701, p. 4-5 (La.App. 4 Cir. 12/23/98), 735 So.2d 665, 667. See also Miller v. Seven C’s Properties, L.L.C., 2001-543 (La.App. 3 Cir. 11/21/01), 800 So.2d 406, writ denied, 2001-33095 (La.3/8/02), 811 So.2d 878; Ricard v. State, 544 So.2d 1310 (La.App. 4th Cir.1989).
It should also be noted that the Louisiana Supreme Court has declared that “[tjrial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief.” Louisiana Supreme Court Committee on Bar Admissions v. Roberts, 2000-2517, p. 3 *678 (La.2/21/01), 779 So.2d 726, 728, citing Liberto v. Rapides Parish Police Jury, 95 456 (La.App. 3 Cir. 11/2/95), 667 So.2d 552.
APPLICABLE LAW
Louisiana Code of Civil Procedure article 1871 provides that “[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed.” Louisiana Code of Civil Procedure article 1876 provides that “[t]he court may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.” Additionally, Louisiana Code of Civil Procedure article 1873 specifically addresses declaratory judgments construing contracts and provides that “[a] contract may be construed either before or after there has been a breach thereof.”
In American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158 (La.1993), the Louisiana Supreme Court discussed the use of declaratory judgment as follows:
Due to its nature, declaratory relief makes it possible to adjudicate a grievance at an earlier time than would otherwise be allowed. The purpose of the judgment is to settle and afford relief from uncertainty and insecurity ... before damages arise and the need for traditional remedies occurs.... Like actions for conventional judgments, basic to the exercise of procedures for declaratory relief, the action must present a justiciable controversy.
I ,Jd. at 161 (citations omitted).
In Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971), the Louisiana Supreme Court defined justiciable controversy in the context of an action for declaratory relief as follows:
A ‘justiciable controversy’ connotes ... an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further ... the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
259 La. at 308, 249 So.2d at 918.
Additionally, in American Waste & Pollution Control, the Louisiana State Supreme Court, citing Tugwell v. Members of the Board of Highways, 228 La. 662, 83 So.2d 893 (1955), stated that “a declaratory action cannot generally be maintained unless it involves some specific adversary question or controversy ... based on existing state of facts.” The Supreme Court further stated that “[a] court must refuse to entertain an action for a declaration of rights if the issue presented is ... based on a contingency which may or may not arise.” Finally, the Supreme Court stated that “[cjases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely.” American Waste & Pollution Control, 627 So.2d at 162. See also Jordan v. Louisiana Gaming Control Board, 98-1122, 98-1133, 98-1134 (La.5/15/98), 712 So.2d 74; Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d 240; Lifemark Hospitals v. St. Jude Hospital of Kenner, 98-476 (La.App. 5 Cir. 10/28/98), 720 So.2d 1244.
Just as the jurisprudence has restricted the application of the declaratory judgment articles in the Louisiana Code of Civil Procedure to present, justiciable ^controversies, Louisiana courts have also *679 declined to render advisory opinions in connection with declaratory judgment lawsuits. See, e.g., Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697, 701 (1993); State v. Board of Supervisors, 228 La. 961, 956, 84 So.2d 597, 599 (1955).
In American Waste & Pollution Control, the Louisiana Supreme Court stated that actions for declaratory judgment must not be brought prematurely. American Waste & Pollution Control, 627 So.2d at 162. Louisiana Code of Civil Procedure article 423 addresses premature actions as follows
An obligation implies a right to enforce it which may or may not accrue immediately upon the creation of the obligation. When the obligation allows a term for its performance, the right to enforce it does not accrue until the term has elapsed. If the obligation depends upon a suspensive condition, the right to enforce it does not accrue until the occurrence or performance of the condition.
■When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued.
DISCUSSION
In the instant case the Lessee and the Corporation assert that the declaratory action was brought prematurely by the Trust and the Trustee. The assertion is based on the fact that any default that might have occurred under the Lease has been effectively suspended under the provisions of its Article 11. Additionally, the action for a declaratory judgment was premature, because the alleged default under the Lease could possibly be cured during the suspension period by an amendment to the Collateral Mortgage [1]. Therefore, the contingency that a cure might be |seffected by an amendment to the offending provisions of the Collateral Mortgage would preclude a declaratory judgment at this time. Under the existing state of facts, a contingency exists. The jurisprudence in Louisiana is clear that a declaratory judgment should not be rendered if a contingency could change the existing facts in a case.
The Trust and the Trustee cite three cases in their brief to support their position that the controversy in the instant case is ripe for summary judgment. They cite Chauvet v. City of Westwego, 599 So.2d 294 (La.1992), Miller v. Seven C’s Properties, L.L.C., 2001-543 (La.App. 3 Cir. 11/21/01), 800 So.2d 406, writ denied, 2001-3309 (La.3/8/02), 811 So.2d 878, and Bergen Brunswig Drug Company v. Poulin, 93-1945 (La.App. 1 Cir. 6/24/94), 639 So.2d 453.
The cases cited by the Trust and the Trustee are distinguishable from the instant case. In Chauvet police officers sought a determination that they had a right to continue receiving certain benefits despite the enactment of a statute purporting to terminate those benefits. The existing facts in that case were not subject to change, no contingency was involved, and the decision of the court would terminate *680 the controversy. Therefore, declaratory judgment was proper in that case.
In Miller there was also a justiciable controversy. A dispute existed between the parties regarding whether repairs to property they co-owned were the type of repairs that were subject to Louisiana Civil Code article 806. The plaintiff in Miller sought a declaratory judgment that if he made certain repairs to the property he would be entitled under article 806 to reimbursement from the other co-owners for their share of the cost of the repairs. Unlike the one in the instant case, the controversy in Miller was ripe for adjudication.
Uln Bergen Brunswig Drug Company there was also a controversy that was jus-ticiable. In that case a lessee sought a declaratory judgment to determine its rights under its lease after a fire had damaged the leased premises. The Bergen Brunswig Drug Company case is distinguishable from the instant case, because there was a situation involving existing facts that were not subject to a contingency, and a declaratory judgment would terminate the dispute between the lessor and the lessee.
In the instant case, if a declaratory judgment determining the rights and obligations of the parties under the Lease had been rendered by the trial court based on the existing facts, that judgment would have become moot if the default were cured during the twenty-four month grace period permitted under Article 11 of the Lease. The declaratory judgment would have been an advisory opinion, because the controversy in the case was not yet justiciable. The exception of prematurity filed by the Lessee and the Corporation was properly granted, and there was no abuse of discretion by the trial court in refusing to render a declaratory judgment.
CONCLUSION
The request for a declaratory judgment made by the Trust and the Trastee was brought prematurely. Therefore, the judgment of the trial court dismissing the declaratory judgment without prejudice is affirmed.
AFFIRMED.

. In their brief, the Lessee and the Corporation state that the Collateral Mortgage .has been cancelled and no longer affects the Leased Premises. The brief is not part of the record on appeal, so this Court is deciding this case on the facts before it, which do not evidence that the Collateral Mortgage has been cancelled. The brief further states that additional mortgages now affect the Leased Premises and that these mortgages have been amended to revise the language in them that was similar to the offending language in the Collateral Mortgage. If the Collateral Mortgage has, in fact, been cancelled and no longer affects the Leased Premises/then the instant case is moot.