JAMES F. McKAY III Judge.
hBy way of background, this matter has its origins in a tragic family event, the death of a young mother on September 5, 2005. At the time of the accident L.S., the minor child of Tara Burst Schmolke and Darren Schmolke, was seventeen months old. After Tara’s death, Darren and Yo-lande Burst and Bernard E. Burst, Jr., Tara’s parents (L.S.’s grandparents), shared in the daily responsibilities of caring for L.S. In fact, they lived together for a substantial period of time. As time went on the relationship between the Bursts and Darren Schmolke deteriorated. On April 30, 2008, the Bursts filed a petition for grandparent visitation pursuant to La. R.S. 9:344. A consent judgment was entered into on July 8, 2008, which granted the maternal grandparents visitation rights. Over time the trial court, due to various changes in circumstances, modified the consent judgment. Ultimately, after tumultuous and prolonged legal battles between the parties and changes in Darren Schmolke’s family situation, the matter came to a head on August 4, 2010, when Darren Schmolke, his new wife, Amber, and L.S. moved to Mooresville, the County of Oredell, State of North Carolina, therein establishing a residency. We |¡>note here that notwithstanding numerous modifications by the trial court, the July 2008 consent judgment has remained in full force and effect throughout this entire litigation.
Pertinent to this appeal, on February 11, 2010, Darren Schmolke filed a petition for declaratory judgment in the Orleans Parish Civil District Court, requesting that the trial court declare that it lacks jurisdiction to adjudicate his rights and the Bursts’ rights with regard to visitations with L.S. Darren Schmolke was clearly seeking a determination by the trial court as to which state, Louisiana or North Carolina, had exclusive jurisdiction over the matter. Germane to this issue is the fact that the trial court had modified the consent judgment on September 18, 2009, to accommodate the Schmolke’s move to North Carolina, a significant change in circumstances. Again it became necessary for the Bursts’ family visitations with L.S. to be modified. However, the Bursts continued to have the right to reasonable visitation rights with L.S. during this transitional period.
After carefully reviewing the record in this matter, it is this Court’s position that despite both parties’ efforts to relitigate the entire juridical history of this case each and every time they come to court, this Court will only address the pertinent and instant issues, as established in the record before us. All other matters are surplusage and not material to the appeal before this Court. For this purpose {ad hoc), we must admonish both parties that the best interest of a small child is at the base of this entire litigation not the individual parties personal needs. One wrong *832 does not justify another, injuria non exu-sat injuria.
| ¡¡The Bursts raise numerous assignments of error. As many are repetitive and related, we summarily address some of them, fully consider others, and preter-mit the rest.
In assignment of error IV the Bursts assert that the Consent Judgment provided that Orleans Parish shall retain jurisdiction over this matter should the Schmolke’s move to another state. The record does not reflect that there is a ruling on this issue, therefore the matter is not properly before this court. This assignment of error is without merit.
In assignment of error VI, the Bursts essentially assert that the trial court erred when it failed to communicate with the North Carolina Court. Regarding communication between the courts, La. R.S. 13:1810, states in pertinent parts: (A) A court of this state may communicate with a court in another state concerning a proceeding arising under this Act. (Emphasis added). We And no motion, rule or petition to recognize a judgment of a foreign jurisdiction in the record before this Court. Any communication between the courts is purely discretionary. This assignment of error lacks any reasonable foundation or merit.
In assignment of error VIII the Bursts assert that the trial court erred in excluding pleadings from a prior matter in a foreign jurisdiction, North Carolina. We find no motion, rule or petition to recognize a judgment of a foreign jurisdiction in the record before this Court. This assignment lacks merit.
The Bursts assert in assignment of error IX that the trial court erred in determining that the September 2009 judgment supersedes the July 2008 consent | judgment. As previously stated the consent judgment has continually been modified by the trial court at the behest of all parties. This assignment is superfluous, redundant and lacks merit.
We will first consider the issue of the Bursts’ rule for contempt against Darren Schmolke for his alleged violation of a court determined visitation date scheduled for February 12, 2010, in North Carolina. Secondly, we will address Darren Schmolke’s petition for declaratory judgment which was filed on February 11, 2010.
RULE FOR CONTEMPT
The Bursts assert in assignment of error VIII that the trial court erred in failing to hold Darren Schmolke in contempt of court for denying them a scheduled visitation.
Pursuant to a prior modification of the July 2008 consent judgment and in recognition of the Sehmolkes’ move to North Carolina in August of 2010, the trial court modified the visitation schedule. We again reiterate that although the relevant consent judgment has been modified numerous times throughout this litigation, the substance of the judgment has not been significantly altered. The Bursts continued to have the right to reasonable visitation rights with L.S. during this transitional period, although the details and current situation are not within the privity of this Court as we are a court of record.
The impetus for the Bursts’ rule for contempt is that on October 21, 2009, the Bursts advised Darren Schmolke that they planned to visit L.S. during the | ^weekend of February 12, 2010, which was just one of many pre-determined visitation dates that the Bursts chose to exercise over a six month period. On January, 22, 2010, Mr. Schmolke emailed the Bursts advising them that this was not a convenient time for the requested visitation date because of *833 various factors: his daughter was coming to North Carolina for a visit; his wife, Amber, had that weekend off of work; L.S. was off of school; and finally, he wished to take a short vacation with family to celebrate his birthday and bond as a family. Darren Schmolke offered the Bursts the following weekend as a makeup visitation. The alternate date proved to be unacceptable to the Bursts. Nevertheless, the record indicates that they were given a make-up visitation date.
The Bursts filed a rule for contempt against Darren Schmolke on February 12, 2010, one day after Darren Schmolke had filed his petition for declaratory judgment with the trial court. On March 28, 2010, the trial court heard the Bursts’ rule for contempt and Darren Schmolke’s petition for declaratory judgment. After hearing all of the allegations and arguments from both sides, the trial court found that Darren Schmolke’s actions did not rise to the level of contemptuous behavior and ordered make-up visitation for the Bursts.
Contempt of court is defined in La. Code Civ. Pro. art. 221 as “any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” There are two types of contempt. A direct contempt is defined in La.Code Civ. Pro. art. 222 as “one committed in the immediate view and presence of the court and of which it |fihas personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record.” A constructive contempt of court is defined in La.Code Civ. Pro. art. 224 as “any contempt other than a direct one.” Although a district court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person willfully disobeyed a court order in violation of La. C.C.Pro. art. 224(2) must be based on a finding that the accused violated an order of the court “intentionally, knowingly, and purposefully, without justifiable excuse.” Lang v. Asten, Inc., 2005-1119, p. 1 (La.1/13/06), 918 So.2d 453, 454. Moreover, an appellate court should reverse the trial court’s decision only when it finds an abuse of discretion. Baker v. Baker, 42,182, p. 6 (La.App. 2 Cir.6/20/07), 960 So.2d 1264, 1268; Rogers v. Dickens, 2006-0898 (La App. 1 Cir. 2/9/07), 959 So.2d 940.
Based upon the record before this Court, we do not find any abuse in the trial court’s vast discretion in its ruling concerning the Bursts’ rule for contempt against Darren Schmolke. As such, we affirm the trial court’s ruling.
PETITION FOR DECLARATORY JUDGMENT
In our analysis of this issue we aggregate the Bursts’ assignments of errors I, II, III, and VII. The Bursts essentially assert that the trial court erred in concluding that they did not have legal custody of L.S., in finding that the Bursts are not persons acting as parents pursuant to the UCCJEA and PKPA, and in finding that the Schmolke’s were residents of North Carolina at the time of the March 25, 2010 hearing.
|7In his petition for declaratory judgment, Darren Schmolke asserted that the trial court, here in Louisiana, no longer had jurisdiction over the underlying matter, he cited as authority to the Uniform Child Custody Jurisdiction and Enforcement Act(UCCJEA).[1]
*834 As noted above, on February 11, 2010, Darren Schmolke filed a petition for declaratory judgment, arguing that pursuant to the UCCJEA, he and his family were residents of North Carolina and that the Louisiana district court no longer had jurisdiction over the case subjudice.
Louisiana Code of Civil Procedure article 1871 provides in relevant part that “[cjourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed.” Louisiana Code of Civil Procedure article 1876 provides that “[t]he court may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.”
In this ease, the issue was whether or not the Civil District Court should retain jurisdiction over the case sub judice in light of the Schmolke family’s move to North Carolina on August 4, 2009. A full hearing on the merits of the case was had and the trial court clearly made a factual determination that the Schmolkes do indeed reside in North Carolina. However, the trial court’s judgment is fatally | Ssilent as to whether or not Darren Schmolke established a domiciliary residence sufficient to relieve the trial court of its subject matter jurisdiction. While inherent in its reasons for judgment, the trial court failed to reduce this factual finding that the Schmolkes reside in North Carolina to judgment.
' In the April 6, 2010 judgment, the trial court essentially ignored the petition for declaratory judgment, instead choosing to stay all proceedings “until the North Carolina Court accepts or declines to exercise jurisdiction.” This action has created an untenable stalemate. The trial court inappropriately refrained from granting Darren Schmolke’s petition for declaratory judgment, which would have terminated the uncertainty of all parties thereby paving the way for the courts of North Carolina to inherit the jurisdiction of all matters pertinent to the 2008 consent judgment, in particularly the Bursts’ reasonable visitation rights. As such we pre-termit any discussion of the Bursts’ assignment of error X in which they assert that they were denied visitation on their birthdays and make-up dates.
Nevertheless, based on the pugnacious relationship between all parties, it is improbable that a change in jurisdiction, at this juncture, will terminate the litigious nature of this case.
The Bursts’ assignments of error I, II, III, and VII essentially assert that the trial court erred in failing to find that they had legal custody of L.S., and erred in determining that the Bursts were not persons acting as parents.
The plethora of comparable case law establishes that grandparent visitation rights pursuant to La. R.S. 9:344 do not trump the constitutionally protected | ¡¡fundamental right to privacy in child rearing. The preeminent case in this area is Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In Barry v. McDaniel, 2005-2455, p. 10 (La. App. 1 Cir. 3/24/06), 934 So.2d 69, our esteemed colleagues in the First Circuit, referencing Troxel, stated: •
[T]he Troxel court placed particular emphasis upon parents’ constitutionally protected fundamental right to make de *835 cisions concerning their children, the presumption that parents act in the best interest of their children, and the failure of Washington statute, or court to give some “material” or “special” weight to the parents’ own determination on the issue of visitation.
Clearly, “any rights to visitations by non-parents are ancillary to that of a fit parent”. Id. p. 10, 934 So.2d at 76.
Arguably, the statute specifically contains the language “visitations,” not custody, which is usually based upon the determination that the parent is in some way unfit. As good as the Bursts’ intentions may be, and as honorable as their desire for L.S to remain an integral member of the entire Burst family, their rights are ancillary to that of the father, Darren Schmolke.
Specifically, in assignment of error I the Bursts aver that based on the language of the August 2008 Consent Judgment, they have periods of “physical custody” of L.S. Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child. Shaffer v. Shaffer, 00-1251, p. 3 (La.App. 1st Cir.9/13/00), 808 |10So.2d 354, 356. The Bursts have neither. The language “physical custody” in the consent judgment does not confer custody, nor can it be reasonably interpreted to be any type of legal custody. The language “physical custody” clearly does not comport with either the spirit of the law or letter of the law. This assignment is without merit.
The above analysis relating to the visitation rights of grandparents issue is essentially from an academic perspective. First and foremost, this is not a granting of visitation but the enforcement of a consent judgment whereby all parties collectively agreed that the Bursts would have visitation with L.S. which would be protected in our sister state, North Carolina, by the full faith and credit clause pursuant to U.S.C.A. Const. Art. IV § 1. Secondly, the trial court’s rationale, in its reasons for judgment, is correct. The trial court based its analysis upon La. R.S. 13:1802(13) which defines “a person acting as a parent” as follows:
(a) Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding; and
(b) Has been awarded legal custody by a court or claims a right to legal custody under the laws of this state.
§ 1814. Exclusive, continuing jurisdiction
A. Except as otherwise provided in R.S. 13:1816, a court of this state which has made a child custody determination consistent with R.S. 13:1813 or 1815 has exclusive, continuing jurisdiction over the determination until:
(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training, and personal relationships; or
In(2) A court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in this state.
*836 B. A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction under this Section may modify that determination only if it has jurisdiction to make an initial determination under R.S. 13:1813.
The Bursts in their answer to Darren Schmolke’s petition for declaratory judgment asserted that the trial court had continuing jurisdiction over the matter and invoked the UCCJEA[2] and 28 U.S.C. § 1738(d), the Parent Kidnapping Prevention Act (“PKPA”) which provides:
(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this subsection continues as long as the requirements of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
The trial court, in its well-founded reasons for judgment stated:
Subsection (c)(1) of the statute mandates that this court have jurisdiction over the status for PKPA to even apply. The UCCJA provided that the court could retain jurisdiction if “the child and at least one contestant, have a significant connection with this state.” However, that language was not included when Louisiana adopted the UCCJEA. Therefore, any case relied upon by the Bursts, subsequent to the adoption of the UCCJEA, has no application to this matter. Furthermore, the PKPA does not confer subject matter jurisdiction upon a court. It simply provides that a sister state must give full faith and credit to a custody decree rendered in another state until which time the rendering state no longer has jurisdiction.
In order for the Bursts to take advantage of LSA-R.S. 13:1814, they must be “a person acting as a parent.” The Bursts have neither been awarded legal custody of — [“L.S.”][3], nor have they had physical custody for “six consecutive months, including any temporary absence, within one year immediately before the commencement of a child custody proceeding.” Therefore, this court 11?finds that the Bursts simply do not fit the definition of “a person acting as a parent.”
The second part of LSA-R.S. 13:1814 addresses the issue of residency. The court must determine if either Mr. Schmolke or L.S. are Louisiana residents. Mr. Schmolke testified that he has no intention of ever moving back to Louisiana. He and his wife, Amber, have contracted to purchase a home in North Carolina. L.S. is currently enrolled in school in North Carolina. Mr. Schmolke testified that he recently obtained a North Carolina driver’s license. However, he is still registered to vote in Louisiana. The Bursts countered, claiming Mr. Schmolke continues to operate a business in Louisiana and his daughter currently lives in Louisiana. This court believes that Mr. Schmolke and L.S. reside in North Carolina. Mr. Schmolke recently refilled a similar suit in North Carolina. Therefore, this court is going to stay all proceedings until the *837 North Carolina Court accepts or declines to exercise jurisdiction.
It is well settled that with regard to the standard of review of a declaratory judgment action that “[o]n appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment.” Edgar Benjamin Fontaine Testamentary Trust v. Jackson Brewery Marketplace, 2002-2337, pp. 4-5 (La.App. 4 Cir. 5/7/03) 847 So.2d 674, 677 (quoting In re Peter, 98-0701, p. 4-5 (La.App. 4 Cir. 12/23/98), 735 So.2d 665, 667). See also Miller v. Seven C’s Properties, L.L.C., 2001-543 (La.App. 3 Cir. 11/21/01), 800 So.2d 406; Ricard v. State, 544 So.2d 1310 (La.App. 4 Cir.1989). Moreover, the Louisiana Supreme Court has held that “[tjrial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief.” Edgar Benjamin Fontaine Testamentary Trust, p. 5, 847 So.2d at 677-78 (quoting Louisiana Supreme Court Committee on Bar Admissions v. Roberts, 2000-2517, p. 3 (La.2/21/01), 779 So.2d 726, 728).
Based on the above and forgoing, we find that the trial court did not abuse its discretion in denying the Burst’s rule for contempt against Mr. Schmolke.
11sWe also find no error in the trial court’s factual determination that Darren Schmolke and his family reside in our sister state, North Carolina. However, we do find that the trial court erred in failing to rule on the issue of continuing jurisdiction. The actions or inactions of the trial court have brought these proceeding to a halt. Neither Louisiana nor North Carolina can proceed without either a ruling of retention of jurisdiction or relinquishing of jurisdiction. Furthermore, this Court granted a request to supplement the record with information from the North Carolina court. Despite attempts to have Mr. Schmolke’s attorney satisfactorily comply with this order pursuant to Local Rule 24 of the Court of Appeal, Fourth Circuit, we were unable to access the information. As such, we forward the information, a CD, on to the trial court as the information is now a part of the record for its review. Accordingly, we remand the matter to the trial court for the sole purpose to make a decision on the jurisdictional issue. In all other aspects we affirm the judgment of the trial court.
AFFIRMED AND REMANDED IN PART.
MURRAY, J., dissents and Assigns Reasons.

. Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter referred to as the UCCJEA) found in Louisiana Revised Statute 13:1801-1842, which sets forth specific rules regarding the recognition, modification, and enforcement of child custody determinations. *834 This statute applies to international cases as well as domestic cases. The purpose of the UCCJEA is to "provide clearer standards for which States can exercise original jurisdiction over a child custody determination.”

. The State of Louisiana adopted the UCCJEA in 2006, with an effective date of August 16, 2007. The UCCJA as adopted by Louisiana in Act 513 of 1978 was the first act adopted by all states to address multi-state custody disputes. This act was superseded by the UC-CJEA.

. We have excluded the name of the child and replaced it with L.S. in this redaction of the trial court’s reasons for judgment.