SHANNON WILLIAMS              \*          NO. 2023-CA-0566
JOHNSON

                            \*

VERSUS                         COURT OF APPEAL

                            \*

FRANK MOLINE JOHNSON,         FOURTH CIRCUIT
SR.                           \*

                             STATE OF LOUISIANA

                  \* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-09656, DIVISION "B"
Honorable Marissa Hutabarat
\* \* \* \* \* \*
**Judge Sandra Cabrina Jenkins**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge
Dale N. Atkins)


James A. Graham, Jr.
Elizabeth Anne Williams
Elizabeth M. Crocker
THE LAW OFFICE OF JAMES A. GRAHAM
701 Loyola Avenue
Suite 403
New Orleans, LA 70113
      COUNSEL FOR PLAINTIFF/APPELLEE

Michael J. Hall
Law Office of Michael J. Hall, L.L.C.
2401 Westbend Pkwy.
Ste. 2102
New Orleans, LA 70114
      COUNSEL FOR DEFENDANT/APPELLANT

                                **AFFIRMED**
                             **MAY 7, 2024**

The defendant, Frank Johnson, appeals the trial court's judgment of April 25, 2023, finding him in contempt of court and awarding the plaintiff, Shannon Johnson, $39,544.99 as the balance due from Mr. Johnson's retirement account as provided for the parties' community property settlement.  For the following reasons, we affirm.

The parties were married on July 10, 1993, and subsequently divorced in November 2020.  They executed a community property settlement agreement before a notary public on December 20, 2020. On December 30, 2020, the parties jointly filed a Petition to Partition Community Property and Joint Motion to Homologate Community Property Partition Settlement Agreement.  The settlement agreement stipulated that Ms. Johnson would receive $198,000.00 from Mr. Johnson's 401K plan with Bayer US Corporation.

In November 2022, Ms. Johnson sought to withdraw her portion from the 401K.  She received a payment on November 7, 2022, in the amount of $158,445.01, an amount which is $39,544.99 less than to which the parties agreed. Ms. Johnson subsequently filed a rule for contempt on September 7, 2022.

The trial court conducted a contempt hearing on March 20, 2023, and after taking the matter under advisement, issued a judgment on April 13, 2023, finding

Mr. Johnson in contempt and ordering Mr. Johnson to pay Ms. Johnson $39,544.99, $250.00 in court costs and $500.00 in attorney fees.

On appeal, Mr. Johnson contends that the trial court erred in finding him in contempt of court for failing to abide by the December 30, 2020 settlement agreement and homologation judgment and awarding Ms. Johnson $39,544.99 as reimbursement for payment of 401K funds due to her. He argues that there was no evidence presented that he acted in a manner that rose to the level of contempt.

Contempt of court is "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. Direct contempt of court is either a contempt committed in the presence of the court or a party's failure to comply with a subpoena or summons. La. C.C.P. art. 222. Constructive contempt is "any contempt other than a direct one." La. C.C.P. art. 224. Constructive contempt includes a party's willful disobedience of a lawful judgment. La. C.C.P. art. 224(2). In order to hold a party in constructive contempt, the trial court must find that the party committed the violation "intentionally, purposely, and without justifiable excuse." *State through Dep't of Child. & Fam. Servs. Child Support Enf't v. Knapp*, 2016-0979, p. 13 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 140 (quoting *Burst v. Schmolke*, 2010-1036, p. 6 (La. App. 4 Cir. 4/6/11), 62 So.3d 829, 833). We review a trial court's finding of contempt under a manifest erroneous standard of review. *Knapp*, 2016-0979, p. 11, 216 So.3d at 139. A trial court's judgment on the issue of contempt will not be reversed unless there is an abuse of discretion. *Marullo v. Extreme Motor Sports of New Orleans, LLC*, 2023-0157, p. 4 (La. App. 4 Cir. 10/25/23), 376 So.3d 964, 968.

2

Both Ms. Johnson and Mr. Johnson testified at the contempt hearing.  Ms. Johnson testified that the December 30, 2020 settlement agreement provided that she would receive $198,000.00 from Mr. Johnson's 401k, IRA, or retirement plan at Bayer US.  The agreement specifically stated that "Shannon Johnson will receive $198,000.00 from Frank Johnson's 401K, IRA or retirement account at Bayer US.  Frank Johnson will execute all documents and waivers necessary to effectuate the payout."

Ms. Johnson referenced the three Qualified Domestic Relations Orders ("QDRO") which had been issued by the trial court in connection with the settlement agreement. The first QDRO issued on November 12, 2021, established that $198,000.00 was to be paid to Ms. Johnson. The QDRO provided, in pertinent part:

> 9. The Alternate Payee's interest in the Plan shall be $198,000.00 of the Participant's total vested account balance under the Plan as of the Valuation Date. . .
>
> 10.  The Alternate Payee's award is entitled to earnings (defined as gains, losses, dividends and interest) from the Valuation Date to the date the award is segregated from the Participant's account.  From and after the Date of Segregation, the Alternate Payee's award shall be in an account under the Plan and shall be entitled to all earnings attributable to the investment therein.
>
>     *                          *                          *
>
> 15.  Neither party shall accept any benefits from the Plan which are the property of the other Party.  In the event the Plan Administrator inadvertently pays to the Participant any benefits that are assigned to the Alternate Payee pursuant to the terms of this order, the Participant shall forthwith return such benefits to the Plan.

Due to Mr. Johnson withdrawing funds from the 401K, a second QDRO was signed on July 13, 2022, providing that

> 9.  The Alternate Payee's interest in the Plan shall be $198,000.00 of the Participant's total vested account balance under the Plan as of the Valuation Date. Currently, the plan value has fallen below

3

[$]198,000.00, so the alternate payee shall be entitled to and receive a disbursement of the remaining balance of the plan. Since, the balance of the plan is below the alternate payees interest of [$]198,000.00 due to withdrawals of the participant, the participant shall reimburse the plan in accordance with the rules set forth in paragraph 15 below.

A third QDRO was executed on August 8, 2022, containing the same language of the second QDRO concerning the alternate payee's entitlement to $198,000.00, and the participant's obligation to reimburse the plan if the balance of the account falls below $198,000.00.

Mr. Johnson stated that he withdrew approximately $214,000.00 from his 401k because he believed that the portion belonged to him. He testified that he removed $33,000.00 from the 401k subsequent to Hurricane Ida. Mr. Johnson testified that 401K account had a balance of $188,049.29, in the beginning of 2022. He stated that due to market volatility, the balance dropped to $158,455.01, in August 2022, when Ms. Johnson withdrew the money. Mr. Johnson stated that he did not remove any funds from the account in 2022. He argued that if he owed Ms. Johnson, it would be the difference between $198,000.00 and balance of the account in January 2022, which was $9,950.71. Mr. Johnson asserted that because the 401K plan was based on market volatility, he should not be held in contempt because Ms. Johnson chose to wait until the value of the account dropped due to the fluctuations of the stock market.

However, as Ms. Johnson countered, the settlement agreement did not provide that the fluctuation of the stock market would be taken into consideration for her payout. The agreement explicitly provided the amount owed, thus, had Mr. Johnson refrained from withdrawing from the plan prior to the disbursement of funds to Ms. Johnson, there would have been sufficient funds for the disbursement.

4

Ms. Johnson, as the mover in the contempt hearing, had the burden of proving that Mr. Johnson's actions, withdrawing funds from the 401K account, leaving a balance below her share constituted constructive contempt. La. C.C.P. art. 224(2) provides that the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court" constitutes a "constructive contempt of court." Ms. Johnson has met her burden. The community property settlement agreement, in which the parties stipulated that Ms. Johnson would receive $198,000.00 from Mr. Johnson's 401K plan with Bayer US Corporation, was made a judgment of the court on December 30, 2020. The trial court subsequently issued three Qualified Domestic Relations Orders regarding the disbursement of the funds owed to Ms. Johnson from Mr. Johnson's 401K account with Bayer. Each of these orders acknowledged that Ms. Johnson was entitled to $198,000.00 from the account and specifically stated that "[n]either party shall accept any benefits from the Plan which are the property of the other Party. In the event the Plan Administrator inadvertently pays to the Participant any benefits that are assigned to the Alternate Payee pursuant to the terms of this Order, the Participant shall forthwith return such benefits to the Plan."

Mr. Johnson was well aware from the settlement agreement and the QDROs issued that he was required to leave $198,000.00 in the account as the amount owed to Ms. Johnson. His argument that he only withdrew his share is without merit. Under the agreement and the QDROs issued, his share was whatever was in the account after leaving $198,000.00 in the account for the benefit of Ms. Johnson. Mr. Johnson's withdrawals were in violation of the settlement agreement and the QDROs, and as such, constitute constructive contempt of court. The trial court did not abuse its discretion in finding Mr. Johnson in contempt of court and

5

awarding Ms. Johnson the remaining balance of the money owed to her, $39,544.99, and court costs and attorney fees.

**AFFIRMED**