735 So.2d 665 (1998)
In re Patricia PETER.
No. 98-CA-0701
Court of Appeal of Louisiana, Fourth Circuit.
December 23, 1998.
Benjamin J. Birdsall, Jr., Birdsall, Rodriguez, Kehoe & Riley, New Orleans, for Appellee.
Ermence Debose-Parent, New Orleans, for Appellant.
*666 Court composed of Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY.
PLOTKIN, Judge.
The sole issue in this appeal is whether the client consented to a settlement of her personal injury claim, which her attorney negotiated on her behalf. Attorney and plaintiff, Michael Rodriguez, filed for declaratory judgment to determine the rights and obligations between himself and defendant, Patricia Peter. The question resolved by the declaratory judgment action was whether or not Ms. Peter consented to the settlement that Mr. Rodriguez entered into on her behalf. The trial court held that a valid settlement existed and Ms. Peter was not under duress when she signed the papers. We affirm.

FACTS:
On October 4, 1996, Patricia Peter and her daughter-in-law, Darnelle Peter were involved in an accident and suffered personal injury. They contacted attorney Michael Rodriguez to represent them in their claim for damages. Attorney Rodriguez sent Patricia Peter to Gulf Coast Medical Consultants, where she was seen and evaluated by Dr. Joseph F. Guenther. He recommended that she see an orthopedist, and communicated this information to Mr. Rodriguez via letter.
Mr. Rodriguez then scheduled an appointment for Ms. Peter to see Dr. L.S. Kewalramani on November 6, 1996. Ms. Peter alleges she never received notification of that appointment, which resulted in her missing it. The appointment was rescheduled for November 14, 1996, and Dr. Kewalramani diagnosed her as having sustained a cervical and lumbar musculoligamentous strain. He suggested further treatment and recommended that she see a surgeon. However, Ms. Peter stopped all treatment after the November 14, 1996, appointment.
Ms. Peter alleges that she consulted Mr. Rodriguez about seeing a surgeon, while Mr. Rodriguez avers he was notified initially about her lack of treatment by Dr. Kewalramani's office. He contends he spoke with her about the importance of seeking further treatment but that she unequivocally stated she would not undergo any more therapy.
Mr. Rodriguez continued to work on both Ms. Patricia Peter and Ms. Darnelle Peter's cases. Sometime between May 16, 1997, and May 22, 1997, Mr. Rodriguez was offered two settlements from Hanover Insurance Company, one for Patricia Peter, and the other for Darnelle Peter. The amount offered to Patricia Peter was $4,903.00. Mr. Rodriguez contacted Patricia and Darnelle Peter sometime between May 22, 1997 and May 28, 1997 to ask them to come to his office and review the possibility of settling their claims. On May 28, 1997, the Peters went to Mr. Rodriguez's office. Mr. Rodriguez explained the settlement offer to them and also stated that if they did not accept the offers, they would not likely be able to get anything more. At that point, Darnelle Peter signed her check and release statement. Patricia Peter did not want to sign anything and so informed Mr. Rodriguez. Mr. Rodriguez asked Darnelle to leave the office so he could speak to Patricia privately. He alleges that he tried to explain to her that he would not be able to get her more than what was offered. She contends that he threatened her, saying she, "was not going to get anything" if she did not sign the release and check. She further alleges that she requested copies of the release and check in order to evaluate them more closely on her own time, but that Mr. Rodriguez said the only way she could get a copy was by signing them. At that point, Ms. Peter testified that she signed both to enable herself to receive copies.
Ms. Darnelle Peter testified that she and her mother-in-law went to Mr. Rodriguez's office to discuss their case on May 28, 1997. She did not recall anything Mr. *667 Rodriguez said except that the checks represented, "all he could do." She could not remember whether or not she witnessed Ms. Peter sign her check, but she did recall being asked to leave the office so Mr. Rodriguez and Ms. Peter could speak privately. She stated Ms. Peter told her not to sign the check but that she did anyway. She did not testify regarding whether or not Mr. Rodriguez threatened Ms. Peter.
Ms. Peter testified further that upon arriving home from Mr. Rodriguez's office on May 28, 1997, and after speaking with a neighbor, she decided she did not want the settlement and immediately telephoned Mr. Rodriguez to notify him. Mr. Rodriguez claims that he was unaware of any dissatisfaction with the settlement until June 4, 1997, one day before the settlement funds were scheduled to be disbursed. On that day, Ms. Peter telephoned him and stated that she no longer wanted to settle. He informed her that all of the necessary paperwork had been sent to Hanover and the money was already deposited in his firm's Client Trust Account. He further stated that he did not know how to "unsettle" a settlement.
After learning of Ms. Peter's unwillingness to complete the settlement, Mr. Rodriguez made an inquiry to the Louisiana State Bar Association Ethics Advisory Committee regarding how to address this situation. That organization advised Mr. Rodriguez to file for a declaratory judgment and allow a court to decide the rights and obligations of the parties. Therefore, Mr. Rodriguez filed his petition for declaratory judgment on June 26, 1997, and trial was held on December 15, 1997. The trial court found that a valid settlement agreement was entered into and divided the $4903.00 accordingly.[1]

DISCUSSION:
Mr. Rodriguez correctly filed a declaratory judgment to determine the merits of this dispute. LSA-C.C.P. art. 1872. LSA-C.C.P. art. 1871 provides:
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.
A suit for declaratory judgment is an appropriate means to decide the rights and obligations of parties to a controversy. When a declaratory judgment would terminate the uncertainty or controversy, the trial court must render such judgment. Liberto v. Rapides Parish Police Jury, 95-456 (La.App. 3 Cir. 11/2/95), 667 So.2d 552, 555. On appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or refusing to render a declaratory judgment. Ricard v. State, 544 So.2d 1310, 1312 (La.App. 4 Cir.1989). Clearly, declaratory judgment was appropriate in this situation. Mr. Rodriguez was faced with an uncertain situation where rapid and efficient guidance from the court was needed to determine his and Ms. Peter's rights. The declaratory judgment procedural device is designed to expeditiously adjudicate these types of disputes.
We must now decide whether or not the trial court abused its discretion when it determined that Ms. Peter consented to the settlement and was not under duress *668 when she signed the settlement documents.
The Louisiana Civil Code governs settlement agreements:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
LSA-C.C. art. 3071. This article is placed in the code to ensure proper proof of extra-judicial agreements. Felder v. Georgia Pacific Corp., 405 So.2d 521, 523 (La.1981). Here, there is no question of proof pertaining to the actual agreement; no one is disputing that Ms. Peter signed the required written settlement documents. Furthermore, Ms. Peter is not alleging that Mr. Rodriguez did not have authority to negotiate a settlement with Hanover.[2] Rather, she simply argues that she did not understand that she was entering into a settlement because Mr. Rodriguez "brow-beat" her into signing the documents, thus the settlement lacked her valid consent and was the product of duress.
The testimony taken at trial is very enlightening regarding whether or not Patricia Peter was aware that she was entering into a settlement agreement. She testified that when she and her daughter-in-law were at Mr. Rodriguez's office, she told her daughter-in-law not to sign any of the documents because they did not authorize him to "accept a settlement" for them. This clearly exhibits knowledge on the part of Ms. Peter that she was being presented with the possibility of settling her claim, and that if she signed the relevant documents, a settlement would be confected. Furthermore, Patricia did not present any evidence regarding duress-causing threats made by Mr. Rodriguez to herself. She simply stated repeatedly at trial that he informed her she would not "get anything" if she did not sign the check. Mr. Rodriguez countered this testimony by explaining that his normal procedure for explaining settlements to clients is to inform them of the amount and to determine if the settlement is acceptable to them. Furthermore, Ms. Peter's neighbor testified that she was listening-in on the phone conversation between Mr. Rodriguez and Patricia regarding the latter's desire to "unsettle" and that Mr. Rodriguez told her the insurance company was unwilling to pay more than what was offered. Merely informing a client that her case is weak and that she will most likely not receive anything more than what was being offered does not rise to the level of duress-inducing threats sufficient to vitiate consent.
Accordingly, we hold that the trial court did not err when it found that Patricia Peter was not under duress, but rather gave valid consent to Mr. Rodriguez to settle her claim. The declaratory judgment is affirmed at appellant's cost.
AFFIRMED.
BYRNES, J., CONCURS.
BYRNES, J., concurring.
I concur in the result in order to express my concern that this Court is rendering a decision putting our blessing on a settlement agreement in the absence of the Hanover Insurance Company, one of the *669 two parties to the agreement. Michael Rodriguez, the plaintiff in this case, acted as the attorney for the defendant in connection with the settlement between the defendant and Hanover, but Rodriguez was not himself a party to the settlement. I believe that Hanover would normally be considered a party "needed for a just adjudication" under LSA-C.C.P. art. 641 and that we should normally notice this defect on our own motion under LSA-C.C.P. art. 927B.
However, as a practical matter I feel that the possibility of Hanover objecting to the decision we render here today is so remote, that in the interest of judicial economy the technical should give way to the practical in this instance. Accordingly, I concur with the majority.
NOTES
[1] The proceeds were divided as follows: Attorney fee to the firm Birdsall, Rodriguez, Kehoe & Riley: $1000; Gulf Coast Medical: $1,953; Dr. L.S. Kewalramani: $450.00; IYC: $638.45; and all remaining funds were to be disbursed to Ms. Peter minus the court costs Mr. Rodriguez incurred in filing the declaratory judgment.
[2] Ms. Peter does not allege in her assignment of error that Mr. Rodriguez lacked authority to negotiate a settlement on her behalf with Hanover. This court will not review errors not assigned. Uniform Rules, Rule 1-3.