933 So.2d 883 (2006)
In re INTERMENT OF Cleo Satter LoCICERO.
No. 2005-CA-1051.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 2006.
*884 Wm. Ryan Acomb, Porteous, Hainkel & Johnson, New Orleans, LA, for Appellant, Allstate Insurance Company.
Christopher E. Lozes, Lozes & Ponder, Mandeville, LA, for Appellee, Ava Marks.
Daniel G. Abel, Daniel G. Abel, Inc., Metairie, LA, for Appellees, Estate of Cleo Satter LoCicero and Ramona L. Hedrick.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS SR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Allstate Insurance Company ("Allstate") appeals the trial court's denial of its Petition for Declaratory Judgment.

STATEMENT OF THE CASE/ ACTION OF THE TRIAL COURT
This litigation results from a defamation suit filed by Plaintiff-Appellee Ramona LoCicero Hedrick ("Hedrick") against her three sisters, Ava Marks ("Marks"), Donna Webre ("Webre"), and Pam Melancon ("Melancon"). Hedrick alleges the facts to be as follows. Cleo Satter LoCicero ("Mrs.LoCicero") died on January 24, 2004, of natural causes while under the care of her treating physicians in the intensive care unit of St. Elizabeth's Hospital in St. John the Baptist Parish. Mrs. LoCicero was the mother of Hedrick, Marks, Webre, and Melancon. Shortly after she died, Mrs. LoCicero's physicians told Hedrick that her mother had died of a heart attack and showed her the diagnostic information which led them to that conclusion. Hedrick, as the Executrix of the Estate, instructed that her mother be brought to Lake Lawn Funeral Home in New Orleans for religious services and burial.
In her petition, Hedrick also alleged the following facts. Since the death of their father four years earlier, defendants Webre and Melancon were estranged from their mother. Subsequently, Marks estranged herself as well. On the day of Mrs. LoCicero's death, Hedrick asked her maternal uncle, Mr. Carl Satter, to contact Webre, Marks, and Melancon and notify them that their mother had died. Almost immediately, defendants Webre, Marks, and Melancon began accusing Hedrick of killing their mother with poison. When they learned that their mother's body was at Lake Lawn Funeral Home in New Orleans, defendants Webre, Marks, and Melancon contacted the funeral director there and began making accusations that Hedrick had poisoned their mother. Webre, Marks, and Melancon informed the funeral director that they would not agree to any funeral or burial arrangements made by Hedrick, and they would not agree to have their late father's casket moved over so that their mother could be buried beside him. Webre, Marks, and Melancon also told the funeral director and other personnel at Lake Lawn that they had spoken *885 with the Coroners of St. John the Baptist and of Ascension Parishes, and that they were demanding an autopsy to prove that their sister, Hedrick, had poisoned their mother. They also told the funeral director not to embalm Mrs. LoCicero, so that they could prove the murder.
Hedrick filed an ex parte "Petition for Internment" in Civil District Court in Orleans Parish seeking and eventually obtaining an order allowing Hedrick to proceed with the funeral and burial of her mother, Cleo Satter LoCicero, a resident of St. John the Baptist Parish. Thereafter, Hedrick filed a First Supplemental and Amending Petition for Damages against her three sisters, Ava Marks, Donna Webre and Pam Melancon seeking damages for the alleged defamatory statements made by Hedrick's estranged sisters.
In her amended petition, Hedrick pleaded that "[d]efendants are liable to petitioner for making knowingly false and defamatory statements against Hedrick and making these statements to numerous third parties ... Defendants Webre, Marks and Melancon negligently made these defamatory statements with reckless disregard for the falsity of the statements and the injuries that would result therefrom."
Allstate had issued a policy of homeowners insurance to Ava Marks and her husband Michael J. Marks before the suit was filed. On October 25, 2004, Allstate filed a "Petition for Intervention and Alternatively, Motion for Declaratory Judgment." In its Petition, Allstate asserted the following affirmative defense:
The Allstate Insurance Company policy of insurance issued to Ava Marks contains a specific policy provision which excludes coverage for any intentional or criminal acts of or to at the direction of any insured, if the loss that occurs may be reasonable (sic) expected to resolve from acts; or is the intent of such acts.
Allstate then asked the trial court to declare the following:
1. That no insurance by Allstate is afforded under its homeowners' policy to Mr. and Mrs. Marks for the claims made against Ava Marks in the main demand;
2. That Allstate has no obligation to provide coverage to Ava Marks;
3. That Ramona LoCicero Hedrick has no cause of action against Allstate for any intentional or criminal acts of Ava Marks; and,
4. Granting such other relief and further relief as the Court may deem to be just and proper.
The trial court denied Allstate's petition for declaratory judgment without reasons.

ASSIGNMENTS OF ERROR
Allstate makes two assignments of error:
1. The trial court abused its discretion when it did not rule in favor of Allstate because there was no countervailing testimony or evidence presented by Hedrick or any defendants at the March 4, 2005 trial; and
2. The trial court abused its discretion by refusing to grant declaratory judgment in favor of Allstate Insurance Company when Allstate's policy excludes coverage for intentional acts and Ava Marks testified that she did not make any defamatory statements or do anything to cause Plaintiff to incur damages.

STANDARD OF REVIEW
"On appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its *886 discretion by granting or refusing to render a declaratory judgment. Ricard v. State, 544 So.2d 1310, 1312 (La.App. 4 Cir.1989)." In re Peter, 98-0701, pp. 4-5 (La.App. 4 Cir. 12/23/98); 735 So.2d 665, 667.

LAW AND ANALYSIS
At the outset, we note that Louisiana Code of Civil Procedure article 1871 provides that "[c]ourts within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed." (emphasis added). Use of the word "may," rather than "shall" evidences the legislature's intent to afford the trial court substantial discretion in deciding whether or not to render declaratory judgment.[1]
Trial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief. Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb v. Roberts, 2000-2517 (La.2/21/01); 779 So.2d 726; Liberto v. Rapides Parish Police Jury, 95-456 (La. App. 3 Cir. 11/2/95); 667 So.2d 552, rehearing denied. Appellate courts, as well as trial courts, may exercise broad discretionary power to decide whether a suit for declaratory judgment is one in which such relief may be appropriate. Billingsley v. City of Baton Rouge, 95-2162 (La.App. 1 Cir. 4/30/96); 673 So.2d 300, writ denied XXXX-XXXX (La.9/20/96); 679 So.2d 439. A trial court must render declaratory judgment where such judgment would terminate uncertainty or controversy giving rise to proceeding; however, within its sound discretion, it may choose or refuse to render declaratory judgment which would not terminate such uncertainty. Morial v. Guste, 365 So.2d 289 (La.App. 4 Cir. 11/8/1978).
With the trial court's substantial discretion in mind, we turn now to Allstate's assignments of error. Both are based upon the fact that Marks testified that she said or did nothing defamatory towards Hedrick, and that no other party presented evidence to contradict or refute Marks' testimony. Essentially, Allstate argues that because Marks denied any wrongdoing, and this denial was uncontradicted at the hearing, it is not responsible for any alleged wrongs to Hedrick and should be dismissed.
A declaratory judgment is a vehicle used to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." La. C.C.P. art. 1874. In this case, the issue was Allstate's coverage of Marks for liability resulting from any defamatory statements she allegedly made. This need not involve more than a comparison between the acts alleged in the petition and the text of the policy.[2] The hearing was not a trial on the merits. It was not an abuse of discretion for the trial court to rule against *887 Allstate when unresolved factual issues remained.
Louisiana Code of Civil Procedure Article 1876 provides that a trial court "may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding." The trial court appropriately refrained from dismissing Allstate while Marks remained a party to the suit, because dismissing Allstate will not terminate the uncertainty giving rise to this proceeding. During a trial on the merits, Hedrick could present evidence to prove that Marks negligently made the alleged defamatory statements. Allstate would then be responsible for the damage resulting from these statements. Yet, Allstate would have already been dismissed from the action. Clearly, dismissing Allstate would not terminate the controversy giving rise to this proceeding, and we find that the trial court did not abuse its broad discretion when it denied Allstate's petition.

CONCLUSION
For the foregoing reasons, we affirm the trial court's denial of Allstate's petition.
AFFIRMED.
NOTES
[1] Louisiana Code of Civil Procedure article 1915(B) provides that "[w]hen a court renders a partial judgment or partial summary judgment ... as to one or more but less than all of the claims, demands, issues or theories... the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." In this case, the trial court signed Allstate's motion and order to make judgment final and appealable on April 22, 2005. Allstate's petition and order for appeal was signed by the trial court on April 21, 2005. Thus, jurisdiction is appropriate.
[2] We note that Louisiana jurisprudence provides that defamation may be based upon a negligent or intentional act. See Fitzgerald v. Tucker, 98-2313 (La.6/29/99); 737 So.2d 706, 715-16. Thus, Hedrick does not need to prove an intentional act in order to be successful on a defamation claim.