ROLAND L. BELSOME, Judge.
LGAN North American Insurance Company (“GAN”) appeals .the declaratory judgment finding that GAN’s insurance policy provided omnibus coverage for an employee who was driving a loaner vehicle owned by Bill Watson Ford (“Bill Watson”). We affirm.
FACTS AND PROCEDURAL HISTORY
On August 10, 1997, an automobile accident occurred between Ernest Battle and Michael Logan on 1-10 East near Michoud Boulevard. Mr. Logan rear-ended Mr. Battle, causing Mr. Battle to suffer severe neck and back injuries. Mr. Logan, a salesperson at Bill Watson, was driving one of the dealership’s “loaner” vehicles at the time of the accident. Mr. Logan was driving the loaner vehicle because his personal vehicle would not start at the end of his shift, at approximately 10:00 p.m., on August 9, 1997. At that time, because no mechanics were available to inspect Mr. Logan’s vehicle and assess the starting problem, Mr. Logan received permission from his supervisor to drive a loaner vehicle for the weekend, filled out a loan agreement, and left his vehicle and keys at the dealership.[1]
| gBill Watson was self-insured for the vehicle and had a liability policy in effect through GAN. Mr. Battle settled with Mr. Logan and Mr. Logan’s insurance carrier, Allstate, for $25,000, and now seeks to recover from Bill Watson through the GAN liability policy.[2]
*228 Both parties agree that the GAN policy is strictly limited to Bill Watson employees and specifically excludes coverage for “customers” of the dealership. However, Mr. Battle argues that Mr. Logan received the loaner car because of his employee status and was therefore not a Bill Watson “customer.” Accordingly, Mr. Battle argues, because Mr. Logan was not a customer of the dealership, the accident is covered by the policy. Conversely, GAN asserts that Mr. Logan was not acting as an employee at the time of the accident, but rather as a customer, and that the GAN does not afford coverage for the accident. Additionally, GAN argues that the trial court improperly admitted into evidence and relied upon the deposition testimony of Michael Logan.
GAN filed a Motion for Declaratory Judgment to determine whether the GAN policy covered Michael Logan at the time of the accident. After a bench trial, the court found that Mr. Logan was not excluded from coverage under the GAN policy because he had received the loaner car due to his status as an employee, rather than his status as a potential customer of the dealership.
STANDARD OF REVIEW
It is well settled that with regard to the standard of review of a declaratory judgment action that “[o]n appeal, the scope of appellate review is confined to a determination of whether or not the trial court abused its discretion by granting or ^refusing to render a declaratory judgment.” Edgar Benjamin Fontaine Testamentary Trust v. Jackson Brewery Marketplace, 847 So.2d 674, 677, 2002-2337, p. 4-5 (La.App. 4 Cir. 5/7/03)(quoting In re Peter, 98-0701, p. 4-5 (La.App. 4 Cir 12/23/98), 735 So.2d 665, 667). See also Miller v. Seven C’s Properties, L.L.C., 2001-543 (La.App. 3 Cir. 11/21/01) 800 So.2d 406; Ricard v. State, 544 So.2d 1310 (La.App. 4 Cir.1989). Moreover, the Louisiana Supreme Court has held that “[t]rial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief.” Jackson Brewery, 847 So.2d at 677-78 (quoting Louisiana Supreme Court Committee on Bar Admissions v. Roberts, 2000-2517, p. 3 (La.2/21/01), 779 So.2d 726, 728).
DISCUSSION
We first address GAN’s argument that the trial court improperly admitted the deposition testimony of Michael Logan as hearsay. When making a determination regarding the effect of an alleged error, a court examines “whether the error, if any, when compared to the record as a whole, has a substantial effect on the outcome of the case.” LaCombe v. (Dr. Walter Olin) Moss Regional Hospital, 617 So.2d 612, 618 (La.App. 3 Cir.1993). See also American Mfrs. Mut. Ins. v. CMC, 582 So.2d 934, 938 (La.App. 2 Cir.1991). Even if the trial court improperly admitted Mr. Logan’s deposition, we find that it would not have had a significant impact on the outcome of the case. Accordingly, the alleged error, if any, was harmless. La-Combe, 617 So.2d at 618.
GAN’s argument that the trial court improperly relied upon Mr. Logan’s deposition testimony is also without merit. Numerous depositions were taken in this case; nothing in the record suggests that the trial court relied only on Mr. Logan’s deposition testimony in reaching its decision, or that the trial court relied |4more heavily upon Mr. Logan’s testimony than any of the other testimony that was offered, without objection, into evidence.
Next, we address whether the trial court erred in finding that Michael Logan was not excluded from coverage under the GAN policy. Calvin Liggett, the general *229 manager and corporate representative of Bill Watson, testified that Bill Watson had no written policy or procedure governing the circumstances under which employees may use company vehicles, and that customers and employees alike must complete a loan agreement in order to receive a loaner vehicle, as Michael Logan did in this case. When questioned about the types of situations in which Bill Watson employees are permitted to use company vehicles, Mr. Liggett testified that employees wishing to drive a loaner vehicle are to “get with a supervisor and to state whatever dilemma they may have” in order to obtain a supervisor’s approval for a loaner vehicle. Mr. Liggett further testified that the decision of whether to allow an employee to take a loaner vehicle was “strictly determined on the employee, the situation that they’re in, the turnaround time of when we would expect the vehicle back, and of course, just the understanding of keeping the vehicle in close proximity while it’s in use.”
Additionally, Joseph Nelson, a corporate comptroller for Bill Watson, testified that “[tjhere in actuality and in practice probably were differing standards as to who was given transportation assistance when their vehicle was ... in for repair.” Mr. Nelson further testified that “[depending on the employee, his or her tenure with the company and the position that they held probably would influence the decision and the frequency maybe with which they had previously made similar requests” would all play a role in determining whether an employee received a loaner vehicle. Finally, Mr. Nelson testified that “the request would still 1 Rhave to go before the employee’s immediate supervisor and/or some higher levels with in the ranks, as in this case Cal Liggett was the one who ... approved it and ... instructed Ronna Bennett to ... get[ ] Mike [Logan] a vehicle that Saturday evening.”
Although Mr. Liggett testified that it was not an official policy of Bill Watson to allow salespeople to borrow Bill Watson’s vehicles for purely personal reasons, Mr. Nelson testified that “there were some cases of [employees using loaner vehicles for reasons other than their personal vehicle being repaired].” Additionally, Mr. Logan testified that he had previously received loaner vehicles for his personal use approximately three times over a two-year period due to his status as an employee.[3]
Finally, we note that both parties’ briefs reference Baker v. Kenney, 767 So.2d 711 (La.App. 4 Cir. 5/3/00), writ denied, 771 So.2d 650 (La.10/13/03) and Gambino v. Lamulle, 715 So.2d 574 (La.App. 4 Cir. 6/10/98). The Gambino and Baker cases are inapposite to the facts here. Both Baker and Gambino involved individuals who were, in fact, customers. While GAN correctly observes that the policies in Baker and Gambino are similar to the GAN policy with regard to the policy language explicitly excluding “customers” from coverage, the fact remains that the trial court found that Mr. Logan was not a customer of the dealership, and accordingly held that he was permitted to drive the loaner vehicle solely because of his employee status. The trial court did not abuse its discretion in so finding. We therefore affirm the trial court’s holding that the GAN policy affords coverage in this case.
^CONCLUSION
The judgment of the trial court finding that the GAN insurance policy provided *230 coverage to Michael Logan as an employee is hereby affirmed.
AFFIRMED.

. Mr. Logan ultimately did not have his vehicle repaired at the dealership. The service department determined that the starting problem was due to a dead battery, and Mr. Logan chose to purchase and install a new battery himself.

. Both Logan and Allstate have been dismissed from the lawsuit. The trial court also dismissed the claims against Watson Investments, Inc. (d/b/a Bill Watson Ford).

. Mr. Logan testified that he recalled using a loaner vehicle from Bill Watson on three separate occasions: once to move some furniture, once “for pleasure on the weekend” and once when his personal vehicle was being repaired.