TERRI F. LOVE, Judge.
|, This appeal arises from two bid solicitations by the City of New Orleans for the removal of material from a demolished apartment complex. The City of New Orleans deemed that the lowest bidder on the second bid solicitation was non-responsible and non-responsive and disqualified the lowest bidder. An administrative hearing officer affirmed the City of New Orleans’ decision. The lowest bidder sought relief from the trial court in several forms, which included the request for a declaratory judgment. The trial court found that the lowest bidder was responsible and responsive. The trial court reversed the City of New Orleans’ decision and the administrative hearing officer’s ruling and granted a declaratory judgment in favor of the lowest bidder. We find that the trial court did not abuse its discretion in finding that the City of New Orleans’ decision that the lowest bidder on the second bid solicitation was non-responsible and non-responsive was arbitrary and capricious. Therefore, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The City of New Orleans (“City”) adjudicated the Higgins Gate Apartments (“Higgins”) as a public nuisance and a blighted property. Higgins was demolished without asbestos abatement, which left the former site (“Site”) of Higgins covered with debris from the demolition. The City then issued a solicitation for bids (“Bid |;>1”) on May 25, 2011, to clear the demolished debris from the Site. Bid 1 required that the contractor “assess [the] site for the presence of materials requiring special removal or otherwise not suited for landfill disposal.” Further, Bid 1 specified that “[t]he Contractor will test all assigned structures and facilities for Regulated Asbestos Containing Material.”
Hamp’s Enterprises, L.L.C. (“Hamp’s”) and Advanced Environmental Consulting, Inc. f/k/a Advanced Environmental Consulting, L.L.C. (“Advanced”), combined as *915 a joint venture[1] (“Hamp’s/AEC”), were awarded the project as the lowest responsible bidder with a bid of $508,100.00[2] on July 18, 2011. The award letter included the following: “DEQ has already determined that this debris is RACM and must be managed, in accordance with LAC 83:111.5151.” The City’s Notice to Proceed, dated October 4, 2011, was signed by Charlie Hampton for Hamp’s/AEC on October 10, 2011. Hamp’s/AEC began removing the demolition debris and was required to complete removal within sixty days.
The Louisiana Department of Environmental Quality (“LDEQ”) and Hamp’s/ AEC began to disagree upon the proper method for the removal of the demolition debris and the percentage of the demolition debris that was Regulated Asbestos Contaminated Material[3] (“RACM”). By January 20, 2012, the LDEQ threatened Hamp’s/AEC with “civil penalties of up to $32,000 per day” if it failed pto dispose of all of the demolition debris “in compliance with LAC 33:III.5151.J.” The LDEQ prevented Hamp’s/AEC from continuing to clear the Site after disapproving of Hamp’s/AEC proposed method of removal and attempt to comply with the LDEQ’s instructions.
Hamp’s/AEC requested an adjudicatory hearing on April 20, 2012, regarding “whether the entire demolition debris pile” at the Site was properly classified as RACM and whether “LAC 33:111.5151.-J.l.c” applies to the Site. On May 11, 2012, the City informed Hamp’s/AEC that it was in default on the contract for Bid 1.
The City filed a Petition for Damages and Declaratory Judgment against Hamp’s/AEC and Hartford Fire Insurance Company (“Hartford”), as the surety that provided the bid bond, “seeking damages, attorney’s fees, and costs for multiple egregious breaches of contract and bad faith failures to perform under a contract to remove hazardous, asbestos-containing demolition debris.”
While the City’s lawsuit was pending, the City issued a second solicitation for bids (“Bid 2”) to clear the Site. Hamp’s/ AEC was, again, the lowest bidder. However, the City mailed a letter dated August 15, 2012, informing Hamp’s/AEC that it was a non-responsible bidder. On August 16, 2012, the City e-mailed Mr. Hampton and attached an interoffice memorandum, both of which stated that Hamp’s/AEC was also deemed a non-responsive bidder. Hamp’s/AEC requested a hearing to refute the disqualification.
A hearing occurred on October 1, 2012, and the administrative hearing officer subsequently affirmed the City’s decisions. Hamp’s/AEC then filed a Verified Petition for Injunction, Judicial Review of Administrative Ruling, Declaratory Judgment, and a Writ of Mandamus against the City and Mary Kay 14Kleinp eter-Z amor a, in her official capacity as the Chief Procurement *916 Officer of the City of New Orleans, seeking to enjoin the City from awarding Bid 2 to another contractor, a declaration that Hamp’s/AEC was the lowest responsible and responsive bidder on Bid 2, and a writ of mandamus directing the City to award the contract for Bid 2 to Hamp’s/AEC. Thereafter, the parties filed a Consent Motion to Transfer and Consolidate the City’s and Hamp’s/AEC’s lawsuits, which was granted. The trial court granted Hamp’s/ AEC’s “Verified Petition for Injunction, Judicial Review of Administrative Ruling, Declaratory Judgment and Writ of Mandamus” and entered “a Declaratory Judgment as follows:”
1. that AEC/Hamp’s is a responsive bidder to City Bid No. 2144-01829.
2. Any contract for the project awarded to and/or executed with a bidder other than AEC/Hamp’s is null and void.
8. That the contract for the Project be awarded to AEC/Hamp’s as the lowest responsive and responsible bidder.
The City’s suspensive appeal followed.
The City contends that the trial court erred by reversing the decision of the administrative hearing officer and by failing to deem Hamp’s/AEC a non-responsive bidder.

STANDARD OF REVIEW

“Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed.” La. C.C.P. art. 1871. “Use of the word ‘may,’ rather than ‘shall’ evidences the legislature’s intent to afford the trial court substantial discretion in deciding whether or not to render declaratory judgment.” In re Interment of LoCicero, 05-1051, p. 4 (La.App. 4 Cir. 5/31/06), 933 So.2d 883, 886, quoting La. C.C.P. art. 1871. “A declaratory judgment is a vehicle used to ‘declare rights, status, and other legal relations whether or not further relief is or could be claimed.’ ” Lo-Cicero, 05-1051, p. 5, 933 So.2d at 886, quoting La. C.C.P. art. 1874. “A trial court must render declaratory judgment where such judgment would terminate uncertainty or controversy giving rise to proceeding; however, within its sound discretion, it may choose or refuse to render declaratory judgment which would not terminate such uncertainty.” LoCicero, 05-1051, p. 5, 933 So.2d at 886.
Appellate courts review a trial court’s grant or denial of a declaratory judgment by determining whether the trial court abused its discretion. Battle v. Watson Invs., Inc., 06-0202, p. 2 (La.App. 4 Cir. 11/21/06), 946 So.2d 226, 228. “Moreover, the Louisiana Supreme Court has held that ‘[tjrial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief.’ ” Id., 06-0202, p. 3, 946 So.2d at 228, quoting Edgar Benjamin Fontaine Testamentary Trust v. Jackson Brewery Marketplace, 847 So.2d 674, 677-78 (2003).

NON-RESPONSIBLE BIDDER

The City contends that the trial court erred by declaring that Hamp’s/AEC was the lowest responsible bidder on Bid 2 because the decision was not arbitrary or capricious.
The City is granted great discretion in awarding contracts to the lowest responsible bidder; “[hjowever, the agency’s discretion must be exercised in a fair and legal manner and not arbitrarily.” Lemoine/Brasfield & Gorrie Joint Venture, LLC v. Orleans Parish Criminal Sheriff’s Office, 10-1220, p. 3 (La.App. 4 Cir. 3/30/11), 63 So.3d 1068, 1070. “[A] court should not substitute its judgment *917 for the good faith judgment of an administrative agency.” Id., 10-1220, p. 3, 63 So.3d at 1071. “The agency’s reasonable good faith interpretation of its own specifications should not be disturbed by a court that may have different views.” Id.
Bid 1, issued on May 25, 2011, provided that the project name[4] was the “Clearance and Removal of formally [sic] Higgins Gate Apartments” and included “Attachment A,” which listed the specifications of Bid 1. Attachment A states that “the contractor will assess site for the presence of materials requiring special removal or otherwise not suited for landfill disposal.” Attachment A also contained the following descriptions of additional contractor responsibilities:
(c) Hazardous Materials and Other Materials Not Suited for Landfill Disposal: The Contractor will examine the site and facilities on the site for Hazardous Waste (HW), White Goods, Waste Tires, and other materials not suited for landfill disposal. The Contractor will prepare a detailed, categorized list of such materials found at the site and deliver the list to the City Representative.
(d) Asbestos Containing Material: The Contractor will test all assigned structures and facilities for Regulated Asbestos Containing Material (“RACM”)....
Under the heading of “Environmental Protection,” the specifications state that “[t]rucks hauling RACM shall be lined” and “[a]ll trucks will have their loads covered with tarps during transport.”
Addendum 1 to Bid 1 includes logistical information regarding a visit to the Site, as well as an “Authoritative Conference Report” from potential bidders with questions asked during the June 6, 2011 pre-bid conference. Question 5 asked: “Is this straight demo or RACM? The City’s official response stated: “RACM. The issue is in the mud and rock.” Question 7 pertained to the trucks hauling demolition debris and stated: “Does the contractor need to haul the debris in lined 17trucks?” The City’s official response was: “Yes. That is a requirement for all commercial properties.” Addendum 2 changed Bid l’s opening date to June 30, 2011. Addendum 3 provided answers to additional questions asked by potential bidders and stated that the requirements for Bid 1 “are outlined to be what is required by Louisiana Department of Environmental Quality (LDEQ).”
Hamp’s/AEC submitted a bid of $811,900.00 minus $303,800.00 for the deductive alternative, which left an actual bid of $508,100.00. On July 18, 2011, Hamp’s/ AEC received an award letter from the City as the lowest responsible and responsive bidder. For the first time, the City stated that the
DEQ has already determined that this debris is RACM and must be managed in accordance with LAC 33:111.5151; and HHW (household hazardous waste) in the debris can be hauled to the same landfill. White goods can be segregated from debris and inspected to ensure that they are not contaminated with RACM and if not, can be recycled. Reference LAC 33:111.5151.
A contract between the City and Hamp’s/ AEC was confected on September 16, 2011.

Bid 1

The City subsequently mailed a Notice to Proceed on October 4, 2011, which Hamp’s/AEC received on October 11, 2011, meaning Hamp’s/AEC was required to complete demolition debris removal on the Site by December 11, 2011. On October 5, *918 2011, Hamp’s/AEC faxed the City in regards to its “Plan of Action for conducting the proposed Scope of Work.” Hamp’s/ AEC informed the City that it “mobilized a Louisiana Department of Environmental Quality (LDEQ) accredited Asbestos Inspector” who performed tests on materials collected at the Site and determined that RACM was not present. However, some “Category II Non-Friable Material” was identified and would be disposed of accordingly. |sHamp’s/AEC then stated that “[i]n the event RACM is encountered, it will be loaded, hauled and disposed of with Asbestos Disposal Verification Forms (ADVF) issued by the LDEQ” at the Riv-erbirch Landfill. On October 21, 2011, the LDEQ informed Hamp’s/AEC that the “LDEQ has declared all debris at this location to be ...” RACM and revoked the Asbestos Disposal Verification Forms (“ADVF”) based on “discrepancies” on the Asbestos Notification of Demolition and Renovation Form (“AAC-2”).
Following a meeting regarding the ADVF revocation, Hamp’s/AEC submitted a written demolition debris removal procedure on October 28, 2011, which stated that:
[w]e were instructed by LDEQ to check the Demo/Reno boxes; however, this project was bid and awarded as a removal of a debris pile, not a demolition or renovation [sic]
The companies involved will load waste into lined trucks while the material is wetted for transport and disposal at River Birch Landfill under ADVF manifests.
AEC was instructed by LDEQ to segregate white goods from the pile as they are encountered for recycling.
The LDEQ then e-mailed Hamp’s/AEC and informed them that the LDEQ was relying on test results from samples taken from the Site by a non-LDEQ accredited inspector prior to the demolition of Higgins. The LDEQ further stated that LDEQ inspectors subsequently obtained samples from the Site and that the “LDEQ will maintain the samples taken by LDEQ inspectors under chain of custody [sic] but will not have them analyzed for asbestos content at this time.” Hamp’s/AEC also obtained samples from the Site, which failed to document that all of the demolition debris was RACM. However, Hamp’s/ AEC stated that “AEC and Hamp’s will load and haul the areas containing brick and transite as RACM.”
|9On December 1, 2011, the LDEQ emailed Hamp’s/AEC wherein the LDEQ stated that “all demolition debris at the site is regulated asbestos containing waste material (ACWM) and must be handled and disposed of as regulated ACWM according to the Asbestos LESHAP (LAC 33:111.5151).” Further, the LDEQ informed Hamp’s/AEC that “[segregation and disposal of any of the demolition debris at this site as C & D waste at the Highway 90 Landfill, or any other landfill that is not permitted to accept regulated asbestos containing waste material, as you propose in your attached letter is prohibited.” Hamp’s/AEC responded that
[p]er EPA documents, materials present after a demolition, including transite, are considered ACWM, not necessarily RACM. We have, all along, been prepared to load and haul the debris as ACWM with disposal at a properly permitted landfill, Hwy 90. In the event we encounter RACM, the materials would be loaded, transported and disposed of as RACM accordingly.
Hamp’s/AEC also reiterated that Bid l’s specifications required the contractor to characterize the waste at the Site and that “there is a huge difference between regulated ACWM and RACM.” Documenting the frustration, Hamp’s/AEC also stated *919 that “[w]e also find it interesting that the LDEQ would rely on an illegal survey for their position” and reminded the LDEQ “that until we pushed back, the LDEQ had not taken any samples at the site even though you had been investigating since March 2010.”
As of January 10, 2012, work had ceased at the Site and Hamp’s/AEC wrote a letter to the City requesting the City’s assistance with the LDEQ “to let [it] go back to work.” On January 19, 2012, Hamp’s/ AEC notified the City and the LDEQ that it planned to “re-mobilize” and begin removing demolition debris from the Site on January 23, 2012. Hamp’s/AEC stated that RACM would be removed |inpursuant to regulations “if and when” RACM was encountered. The following day, the LDEQ notified Hamp’s/AEC that if it proceeded as described in the January 19, 2012 letter, then the LDEQ would “address all violations of law with the authority provided by the Environmental Quality Act, which includes civil penalties of up to $32,000 per day of violation and referral to the appropriate authorities for criminal prosecution.” Thus, Hamp’s/AEC had to once again request assistance from the City to work on the Site.
Once Hamp’s/AEC received the LDEQ’s test results from the Site, Hamp’s/AEC noted that the LDEQ’s own test results did not support the position that all of the demolition debris was contaminated with asbestos. However, the LDEQ informed the City that all demolition debris must be treated as Asbestos-Containing Waste Material[5] (“ACWM”). The LDEQ did not mention RACM in the correspondence. Hamp’s/AEC then notified the City that it would resume demolition debris removal at the Site on February 8, 2012.
However, on February 24, 2012, Hamp’s/AEC wrote additional correspondence to the City stating that the LDEQ forced it to cease operations at the Site. Hamp’s/AEC also alleged that a representative of the “LDEQ stated that the LAC 33:III.5151.J. [sic]” did “not apply to this project site” because it was a ‘“special case.’” Hamp’s/AEC also sent correspondence to the LDEQ on February 24, 2012, because an LDEQ representative previously informed Hamp’s/AEC “that [it] had to burrito wrap the waste or face a possible Notice of Violation” and | n reiterated that the LDEQ stated that La. Admin. Code tit. 33, pt. Ill, § 5151.J did not apply because the Site was considered a “ ‘special case.’ ” Lastly, Hamp’s/AEC requested clarification in writing from the LDEQ as to which applicable regulations apply in order for it to resume demolition debris removal to fulfill the contract with the City.
On March 2, 2012, the LDEQ informed Hamp’s/AEC that La. Admin. Code tit. 33, pt. Ill, § 5151.J.1.C did not apply to demolition debris removal at the Site. La. Admin. Code tit. 33, pt. Ill, § 5151.J.1.C provides that:
[f]or facilities demolished where the RACM is not removed prior to demolition according to Clauses F.3.a.i, ii, iii, and iv of this Section or for facilities demolished according to Subparagraph F.3.i of this Section, adequately wet asbestos-containing waste material at all *920 times after demolition and keep wet during handling and loading for transport to a disposal site. Asbestos-containing waste materials covered by this Sub-paragraph do not have to be sealed in leak-tight containers or wrapping but may be transported and disposed of in bulk. (Emphasis added).
The LDEQ stated that it was “well within” Hamp’s/AEC’s “capabilities to review the regulations and determine what is required for compliance based on the activities you are undertaking.” The LDEQ informed Hamp’s/AEC that $32,500 in civil penalties per day for violations could be assessed. On March 5, 2012, Hamp’s/AEC proposed “to have asbestos accredited personnel wet the debris piles prior to and during loading operations.” The trucks carrying the demolition debris would “be covered with clear poly and secured with duct tape and spray glue in an effort to keep the materials wet while in transport” and the trucks would have “DOT nets over the plastic sheeting.”
Hamp’s/AEC then employed the Davillier Law Group, L.L.C. (“Davillier”) as its legal representation in connection with its contract with the City. Davillier [ ^corresponded with the LDEQ for clarification regarding the applicability of La. Admin. Code tit. 33, pt. Ill, § 5151.J.1.C.
The LDEQ instructed Hamp’s/AEC on March 21, 2012, that the proposed work plan was “deficient” and “unacceptable.” The LDEQ then requested that Hamp’s/ AEC “submit a new work plan that details how AEC plans to comply with all of subsections F and J for LAC 33:111.5151.” By April 4, 2012, the LDEQ contacted Davillier to reiterate that La. Admin. Code tit. 33, pt. Ill, § 5151.J.1.C did not apply to demolition debris removal at the Site. On April 11, 2012, Davillier wrote the City stating that Hamp’s/AEC could not resume demolition debris removal at the Site “[u]ntil the Contractor receives a final, non-appeal-able determination of the legality of its proposed work plan and its obligations under the applicable laws and regulations.” Hamp’s/AEC then filed a Request for an Adjudicatory Hearing.
On May 11, 2012, the City notified Hamp’s/AEC that it was in default on the contract for failure to perform within the allotted time, failure to perform the work within the contract term, failure to comply with the LDEQ regulations, and refusal to perform further work under the contract. Subsequently, the City filed the Petition for Damages and Declaratory Judgment on May 31, 2012.

Bid 2

The City subsequently issued a solicitation for Bid 2, on July 16, 2012, to clear the Site. Bid 2 was largely the same as Bid 1. However, Addendum 1 to Bid 2 included the following specific changes:
• Page 6, (2) Initial Verification and Assessment, (d) Asbestos Containing Material changes to The [sic] structures and facilities have been determine [sic] as RACM, therefore the Contractor is not required to perform any testing.
|1R* Page 23, b, Work Schedule, sentence one, changes to: The Contractor shall complete the work within ninety days of issuance of the NTP.
• There will be no segregation of any material from the pile. (Disregard anything in the bid that states otherwise). Everything goes as RACM to a certified RACM landfill. There will be no separation, from the point of picking, proper handling into trucks, it must be wrapped.
• The concrete slabs will not be removed. The contractor shall remove all of the RACM off of the entire area, retard as much vegetation as possible *921 and at that point the contractor will need to encapsulate the slab. The slab must be encapsulated in conjunction with the Asbestos Disposal Verification Form (ADVF)
During a pre-bid conference the City stated that it would work with the contractor on the 90-day completion request because “the City know[s] that they [sic] maybe [sic] factors that may delay the work....” The City also stated at the pre-bid conference, in regards to the demolition debris, that “you do have to burrito wrap it.”
Hamp’s/AEC submitted a bid of $821,-900.00[6] on Bid 2 and was the lowest bidder. However, the City notified Hamp’s/ AEC on August 15, 2012, that it was deemed a non-responsible bidder and disqualified from Bid 2. The City stated that Hamp’s/AEC:
1. Failed to perform within the allotted time.
2. Failed to perform work within the contract term.
3. Failed to comply with LDEQ regulations according to the Bid Specifications and other communications received by your firm from the City and/or LDEQ.
4. Refused to perform further work under the contract.
Further, the City found that Hamp’s/AEC demonstrated a “lack of operational 114competence,” an “inability to perform according to contract,” an “unwillingness to comply with state environmental regulations,” a “lack of oversight, carelessness, poor judgment,” a “lack of concern for the City’s contracting needs and systemic management deficiencies.” The City offered Hamp’s/AEC the requested hearing to refute the disqualification. After being disqualified for being deemed a non-responsible bidder, Hamp’s/AEC received an e-mail from the City indicating that Hamp’s/AEC was also deemed a non-responsive bidder.[7]

Administrative and Trial Court Rulings

Following a hearing, an administrative hearing officer found that the City “submitted sufficient evidence to prove that it did not act in an arbitrary, unfair or illegal manner in disqualifying” Hamp’s/AEC from Bid 2. Further, the administrative hearing officer stated that she did not find “anything that would support a finding that CNO did not make a good-faith judgment” and affirmed the City’s decision to disqualify Hamp’s/AEC from Bid 2. Hamp’s/AEC then filed a Verified Petition for Injunction, Judicial Review of Administrative Ruling, Declaratory Judgment and a Writ of Mandamus. The trial court reversed the holding of the administrative hearing based on the following:
[t]his case essentially pits “wet truck removal” against “burrito wrap” for the removal of RACM at the Higgins Gate Apartment site. It involves different interpretations of LAC33III.5151.J and whether or not all of the debris at the former Higgins Gate site must be removed and handled as RACM. If all the debris were considered RACM, the debris would have to be “burrito wrapped” and transported to a landfill designated to receive RACM debris.
Upon review and consideration of the evidence, law and argument of counsel, the court find that it is undisputed that the Higgins Gate Bid No. 1 specifications |1Bas amended by the three (3) addenda thereto, did not expressly state *922 that “all of the debris is RACM” and “the debris must be burrito wrapped.” The position taken by LDEQ and adopted by the City that all of the debris was RACM and the debris must be burrito wrapped is a position that was taken subsequent to the bid submission and opening and the awarding of the contract to AEC/Hamp’s. This change resulted in a significant increase to the bid proposal submitted by AEC/Hamp’s and, eventually resulted in an involuntary work stoppage despite the joint venture’s concerted efforts to resolve through negotiations and dialogue with the City and LDEQ.
The court finds that Bid specifications for Higgins Gate Bid No. 2 were very specific relative to the method of debris removal required for the project. City of New Orleans Bid Solicitation No. 2144-01329 (Higgins Gate Bid No. II) differs substantially from City of New Orleans Bid Solicitation No. 2144-01134 (Higgins Gate Bid No. I). Section B(2)(b)(Z), subpart (c) “Environmental Protection and Hazardous Materials” at page 11 of Higgins Gate Bid No. 1 provided in pertinent part:
Trucks hauling RACM shall be lined. All truck [sic] will have their loads covered with tarps during transport.
This same section (Section B(2)(b)(l), subpart (c), p 11-12) of Bid Solicitation No. 2144-01329 (Higgins Gate No. 2) provides in pertinent part:
Trucks hauling RACM shall be lined and in accordance with LADEQ standards, the material must be burrito wrapped to prevent dust and debris released during loading and hauling and transporting to the landfill. In addition, all trucks will have their loads covered with tarps during transport. (Emphasis added).
The court concludes that this change was substantial and goes directly to [sic] crux of the difference of interpretation that prompted AEC/Hamp’s to suspend work on the site under the threat of civil penalties which eventually led to the City’s disqualification of AEC/Hamp’s on Higgins Gate Bid No. 2.
Under any analysis, the language added to above referenced subpart is intended to clarify LDEQ and the City’s position that the debris should be burrito wrapped. Included in the action of clarifying this language is an acknowl-edgement that the previous language in City Bid |! (¡Solicitation No. 2144-01134 was not clear and was subject to reasonable interpretations of the Louisiana Regulatory Code that did not require burrito wrapping of all the debris. Accordingly the court concludes that the City did not act reasonably when it deemed AEC/Hamp’s a non-responsible bidder.
[[Image here]]
As the lowest responsive bidder on Higgins Gate Bid No. 2, AEC/Hamp’s is entitled to be awarded the contract for Bid No. 2144-01329 when the basis for its disqualification is unsupported by the record. The issue of the entire site being designated as “all RACM” was not clarified until post-bid award of the project. When AEC/Hamp’s pointed out the increased costs for implementing the burrito wrap method, the City did not want to pay the costs. When AEC/ Hamp’s offered the alternative wet truck method, which was less expensive but approved removal method under LDEQ regulations, LDEQ refused to accept this compromise. The additional cost for burrito wrap was not caused by AEC/Hamp’s but, rather the company that demolished the property, without authorization or remediation for asbes *923 tos containing materials at the apartment complex. This lack of diligence on the part of the City for allowing the demolition to proceed without proper precautions/protections against asbestos at the site should not be borne by AEC/ Hamp’s with the unfounded designation of “non-responsible” bidder.
* * *
Based upon the totality of the evidence submitted by the parties, the Court finds that the City did not act reasonably in determining bidder responsibility of AEC/Hamps and issuing the disqualification letter for Higgins Gate Bid No.2. There is but little dissent from the general rule that, in determining who is such ‘lowest responsible bidder,’ or lowest and best bidder,’ public boards and officials are vested with wide discretion. Their decision, when based upon an honest exercise of the discretion thus vested in them, will not be interfered with by the courts, unless apparently arbitrary or capricious.
The trial court then entered a declaratory judgment providing that:
1. that AEC/Hamp’s is a responsive bidder to City Bid No. 2144-01329.
2. Any contract for the project awarded to and/or executed with a bidder other than AEC/Hamp’s is null and void.
1173. That the contract for the Project be awarded to AEC/Hamp’s as the lowest responsive and responsible bidder.
As discussed above, the discretion to award a contract to the lowest responsible and responsive bidder “must be exercised in a fair and legal manner and not arbitrarily.” J.W. Rombach, Inc. v. Parish of Jefferson, 95-829, p. 13 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305, 1310. While “a court should not substitute its judgment for the good faith judgment of an administrative agency,” we do not find that the trial court has done so in the case sub judice. Lemoine, 10-1220, p. 3, 63 So.3d at 1071.
Hamp’s/AEC repeatedly sought guidance from the LDEQ and assistance with the LDEQ from the City. The record documents Hamp’s/AEC’s attempted to comply with the environmental regulations. Once the City required that all of the demolition debris be “burrito wrapped” post-bid, Hamp’s/AEC’s costs surpassed the projections in Bid 1. Hamp’s/AEC attempted to recommence demolition debris removal at the Site twice, but was ordered to cease removal by the LDEQ or face possible criminal charges and civil penalties. Hamp’s/AEC contacted the City for further assistance with the LDEQ to no avail. When Hamp’s/AEC proposed the “wet truck” removal method, which was in compliance with LDEQ regulations, the LDEQ did not approve the removal method. Additionally, differing interpretations of La. Admin. Code tit. 33, pt. Ill, § 5151.J and discrepancies as to whether all of the demolition debris at the Site was RACM resulted in substantial changes in the requirements for demolition debris removal at the Site, as reflected in Bid 2.
The extensive attempts, as outlined above, demonstrates Hamp’s/AEC’s commitment to fulfilling the contract on Bid 1. Therefore, after reviewing all of 118the extensive evidence, we do not find that the trial court abused its discretion in granting the declaratory judgment, which held that the administrative officer was arbitrary and capricious by deeming Hamp’s/AEC a non-responsible bidder and affirm.

NON-RESPONSIVE BIDDER

The City asserts that even if Hamp’s/AEC was the lowest responsible bidder, Hamp’s/AEC was a non-responsive bidder because Mr. Hampton signed the Disadvantaged Business Enterprise Re *924 sponsiveness Form (“DBE-1”) affirming that Boines Construction Equipment Company, Inc. (“Boines”) would perform thirty-five percent of the work required by Bid 2.
Mr. Hampton, as the designated signatory for Hamp’s/AEC, signed the DBE-1, which affirmed that Boines would perform thirty-five percent of the work on Bid 2. The City contests the signature and asserts that Michael Boines should have signed the DBE-1, as the President and Director of Boines. Mr. Boines signed an affidavit, which provided that he obligated Boines to perform with Hamp’s/AEC and that he:
authorized Charlie Hampton, in his capacity as the agent for AEC/Hamp’s Joint Venture, to execute any and all documents necessary to evidence Boines Construction’s acceptance of the aforementioned obligation and to affirm Boines Construction’s commitment to perform thirty-five (85%) of the scope of work of the project as discussed and agreed to between Boines Construction and AEC/Hamp’s Joint Venture.
The City concedes that it previously waived the DBE-1 signature requirements, but attempts to utilize Hamp’s Const., L.L.C. v. City of New Orleans, 05-0489 (La.2/22/06), 924 So.2d 104, for the premise that it is no longer permitted to waive requirements. Hamp’s held that a public entity cannot waive requirements | ^included “on the bid form” in accordance with the Public Bid Law. 05-0489, p. 10, 924 So.2d at 111.
However, we find Hamp’s distinguishable because no requirements needed to be waived for Hamp’s/AEC to be deemed a responsive bidder.[8] In the case sub judi-ce, the bid proposal submitted for Bid 2 contained a DBE-1 signed by Mr. Hampton with Mr. Boines’ express permission. Accordingly, under the facts and circumstances presented, we do not find that the trial court abused its vast discretion in finding that Hamp’s/AEC was a responsive bidder and affirm.

DECREE

For the above-mentioned reasons, we find that the trial court did not abuse its discretion in granting Hamp’s/AEC’s request for a default judgment, as the record reflects it was the lowest responsible and responsive bidder. Therefore, we affirm.
AFFIRMED.
DYSART, J., Dissents With Reasons.

. The City’s First Amended and Supplemental Petition added that Hamp’s/AEC was "a purported joint venture.”

. The original bid for $811,900.00 included a deductive alternative for the “Deduction of Demolition and Removal, including Recycling and Abatement, of Foundations, Slabs, Sidewalks, Driveways and Streets,” which Hamp’s/AEC valued at $303,800.00.

. RACM is: "a. friable asbestos material; b. Category I nonfriable ACM that has become friable; c. Category I nonfriable ACM that will be or has been subjected to sanding, grinding, cutting, or abrading; or d. Category II nonfriable ACM that has a high probability of becoming or has become crumbled, pulverized, or reduced to powder by the forces expected to act on the material in the course of demolition or renovation operations regulated by this Subchapter.” La. Admin. Code tit. 33, pt. Ill, § 5151.

. Bid 1 listed the project as a capital project as opposed to a public works project.

. ACWM is characterized as ‘‘mill tailings or any waste that contains commercial asbestos and is generated by a source subject to the provisions of this Subchapter. This term includes filters from control devices, friable asbestos waste material, and bags or other similar packaging contaminated with commercial asbestos. As applied to demolition and renovation operations, this term also includes regulated asbestos-containing material waste and materials contaminated with asbestos, including disposable equipment and clothing.” La. Admin. Code tit. 33, pt. Ill, § 5151.

. Hamp's/AEC's bid on Bid 2 was substantially higher than that of Bid 1.

. The City attached an interoffice memorandum from the City’s Office of Supplier to Diversity to the e-mail.

. Accordingly, we also find that Enmon Enterprises, L.L.C. v. City of New Orleans ex rel. New Orleans Aviation Bd.., 11-0459 (La.App. 4 Cir. 9/28/11), 76 So.3d 548 and Command Const. Indus., L.L.C. v. City of New Orleans, 13-0524; 13-0525 (La.App. 4 Cir. 10/23/13), 126 So.3d 716, 2013 WL 5757865, are equally distinguishable, as the cases involve the waiver of bid requirements.