| | | |
|---|---|---|
| JEREMIAH THOMAS | * | NO. 2020-CA-0475 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| WASTE MANAGEMENT OF | * | |
| LOUISIANA, LLC D/B/A | | FOURTH CIRCUIT |
| WASTE MANAGEMENT NEW | * | |
| ORLEANS HAULING AND | | STATE OF LOUISIANA |
| WARDELL ALLEN | * * * * * * * | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 62-894, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Edwin A. Lombard**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Tiffany G. Chase)

Jeffery A. Mitchell
Monica C. Sanchez
Hugo L. Chanez
MITCHELL SANCHEZ, LLC
3850 N. Causeway Blvd., Suite 1500
Metairie, LA 70002

-AND-

Troy R. Keller
TROY R. KELLER, APLC
917 N. Causeway Blvd
Metairie, LA 70001

      COUNSEL FOR PLAINTIFF/APPELLEE

Charles J. Duhe, Jr.
Michael M. Thompson
Lacey Sanchez Rispone
TAYLOR, WELLONS, POLITZ & DUHE, APLC
4041 Essen Lane, Suite 500
Baton Rouge, LA 70809

      COUNSEL FOR DEFENDANTS/APPELLANTS

           **AFFIRMED**

           **FEBRUARY 24, 2021**

EAL

TFL

TGC

The Appellant, Waste Management of Louisiana, LLC d/b/a Waste Management New Orleans Hauling ("WM"), seeks review of the January 30, 2020 judgment of the district court, granting the Motion for Constructive Contempt of the Appellee, Jeremiah Thomas, and awarding him $1,500 in attorney's fees plus costs. Based upon our review of the facts and applicable law, we affirm the district court's judgment, finding no abuse of its vast discretion.

**Facts and Procedural History**

This appeal stems from a personal injury lawsuit filed by Mr. Thomas in Plaquemines Parish. Mr. Thomas was working at a landfill in Belle Chasse on April 2015, when the door of a WM container he was standing near snapped open, striking him on the back of his head. The WM container was on a vehicle being operated by Wardell Allen. Mr. Thomas was knocked unconscious upon impact. Mr. Thomas alleges that as a result of the accident he suffered a traumatic brain injury (TBI) and other severe injuries that required him to undergo back surgery and receive treatment for consistent neck pain, in addition to other treatments. In

1

2016, he filed a lawsuit against Mr. Allen and WM, seeking economic and non-economic damages.

The instant appeal involves a three-year discovery dispute over WM's failure to produce certified copies of insurance policies requested by Mr. Thomas. This dispute began in August 2017, when Mr. Thomas propounded a Request for Production of Documents upon WM, which included the following request for insurance policies:

> Please produce a certified copy of any and all insurance policies, including but not limited to:
>
> A. Liability insurance policy(ies);
> B. Excess insurance policy(ies);
> C. Commercial general liability (CGL) insurance policy(ies);
> D. Protection and indemnity insurance policy(ies);
> E. Umbrella policy(ies); and
> F. Any other applicable insurance policy(ies) providing coverage to Waste Management for the claims made in this action.

WM failed to initially respond and again failed to respond after receiving a two week extension. Mr. Thomas then moved to compel WM to comply. The district court granted the motion to compel ("First Judgment") at a December 4, 2017 hearing, and ordered WM to respond within 30 days. WM did not make an appearance at the hearing.

Thereafter, WM again failed to provide Mr. Thomas with discovery responses, causing Mr. Thomas to file a second discovery motion, "Motion for Constructive Contempt and to Compel Responses to Discovery." WM then responded, producing a $2,000,000 policy, which it claimed was its primary

policy. It also submitted a supplemental response to the discovery, but did not produce another policy, explaining:

> The previously produced policy provides more than enough coverage for the plaintiff's claims in this case.

Nevertheless, the district court granted the second motion in part and with respect to insurance, the court ordered WM to produce all relevant insurance policies in an August 30, 2018 judgment, referred to herein as the Second Judgment.[1]

WM then submitted an additional $9,000,000 policy, totaling proof of $11,000,000 in coverage, rationalizing that the value of Mr. Thomas' claim was less than this amount. WM's response, however, spurred Mr. Thomas to file a third motion— Motion for Constructive Contempt— averring that WM purposefully disregarded the Second Judgment issued by the district court. At a January 13, 2020 hearing, the district court granted the motion (hereinafter the "Contempt Judgment") with regard to the outstanding insurance discovery and ordered that all policies be produced within 30 days. The court further imposed sanctions against WM, which was ordered to pay $1,500 in attorney's fees plus costs to Mr. Thomas.

This timely suspensive appeal followed. WM raises two assignments of error:

---

[1] The district court's Second Judgment states in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendants, Waste Management of Louisiana, LLC, d/b/a New Orleans Hauling, and Wardell Allen, shall respond to plaintiff's discovery requests, including:
>
> 1) Providing all applicable insurance policies relevant to the event that gave rise to this lawsuit, in response to Request for Production No. 6 . . .

1. The district court committed manifest error when it changed the Second Judgment, and, consequently, found WM in contempt of court despite its compliance with the court's First Judgment; and

2. The district court misinterpreted La. Code Civ. Proc. art. 1423, resulting in the Contempt Judgment, wherein WM was ordered to produce its insurance tower or layers of insurance. Moreover, the court failed to conduct a balancing test of Mr. Thomas' showing of the potential judgment value against the relevancy and hardship of producing insurance policies that "may be liable to satisfy part or all of [that] judgment" as required by law.

## Standard of Review

Trial courts are vested with broad discretion when ruling upon discovery matters. *Sercovich v. Sercovich,* 11-1780, p. 5 (La.App. 4 Cir. 6/13/12), 96 So.3d 600, 603. Appellate courts should not disturb such rulings absent a clear abuse of discretion. *Id.* "An appellate court must balance the information sought in light of the factual issues involved and the hardships that would be caused by the court's order when determining whether the trial court erred in ruling on a discovery order." *Id.* (internal citation omitted).

Moreover, appellate courts also review a district court's finding of contempt for an abuse of discretion. *Laborde v. Laborde*, 19-0634, p. 4 (La. App. 4 Cir. 5/6/20), 299 So. 3d 657, 660, *writ denied*, 20-0686 (La. 9/29/20), 301 So. 3d 1193 (citations omitted). In *Germain v. Germain*, 19-0067, 19-0068, 19-0069, pp. 3-4 (La. App. 4 Cir. 9/11/19), 282 So.3d 282, 285, we defined contempt and further explained the vast discretion afforded to the district court in matters where a party disregards court orders:

> Contempt of court is defined as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221.

Pursuant to La. C.C.P. art. 224(2), the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court" constitutes constructive contempt of court. In order for the trial court to find the accused in constructive contempt of court, the trial court must find that the accused "violated an order of the court 'intentionally, purposely, and without justifiable excuse.'" *Knapp*, 16-0979, p. 13, 216 So.3d at 140. (quoting *Burst v. Schmolke*, 10-1036, p. 6 (La. App. 4 Cir. 4/6/11), 62 So.3d 829, 833). "The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion." *Id.*, 16-0979, p. 13-14, 216 So.3d at 140.

Thus, in the instant matter, we apply the abuse of discretion standard to our review of the Contempt Judgment.

## Consistency of the District Court Judgments

The first assignment of error raised by WM is that the district court manifestly erred by unreasonably changing its judgments, and ultimately requiring WM to produce all of its policies to Mr. Thomas. WM avers that the district court twice changed its judgment, which resulted in WM producing more of its policies each time. The district court ultimately mandated WM share all of its policies despite the fact that WM had already produced policies that would cover an $11,000,000 claim, which WM avers exceeds the value of the instant claim. We find this assignment of error to be without merit because the district court thrice ordered the production of all relevant insurance policies.

WM summarizes the allegedly ever-changing discovery rulings of the district court as follows:

First Judgment: "fully respond to the Plaintiff's discovery", which in this instance was Request for Production No. 6.

5

> Second Judgment: ordering WM to "provide all applicable insurance policies relevant to the event that gave rise to this lawsuit."
>
> Hearing on the Motion for Constructive Contempt: The district court stated "I meant every policy that could possibly provide coverage."

WM characterizes the wording of the judgments and the district court's rulings as being ever-changing and having unreasonable terms. Terms such as "fully respond," "provide all applicable policies" and submit "every policy that could possibly provide coverage," however, instead evidence that the district court consistently ordered the production of *all relevant insurance policies*.

The record reveals that there was no substantive change in the judgments issued by the Court. As WM did not make an appearance at the initial motion to compel hearing, it should have sought clarification of the First and Second Judgment, instead of persistently failing to comply and later doling out the policies it opted to disclose.

Indeed, at the January 2020 contempt hearing, the district court explained that it was ordering the production of the same insurance policies it had originally ordered, which is why it awarded attorney's fees for all the previous rules:

> . . . I'm going to order the production, *once again,* on these documents, failure of which to produce could result in dismissal of any argument you might have at trial. And then *I'm also ordering attorney fees and court costs for the -- filing the Rule today. Not only today's Rule, but the previous Rules on the same issue.* [Emphasis added].

The district court's explanation belies WM's assertion that there was any change in what was ordered to be produced.

In consideration of the foregoing, we further find WM's assertion that it would have been in compliance with the First and Second Judgments had the

6

Contempt Judgment not been issued is also erroneous because WM's repeated failure to comply led to the rendering of the Contempt Judgment. This assignment of error is without merit.

We address in the following assignment of error the underlying issue of whether the district court had the authority to order production of all applicable insurance policies.

## Application of La. Code Civ. Proc. art. 1423

WM asserts in its second assignment of error that the district court's Contempt Judgment resulted in a misapplication of La. Code Civ. Proc. art. 1423, and the court erroneously required WM to produce all of its policies. WM maintains that under the clear wording of article 1423 and Louisiana jurisprudence, a balancing test of factual issues and hardships is required when ordering the production of discovery. If such a test were applied, WM maintains it would not be required to produce all of its applicable policies. WM further asserts that it is an absurd consequence to make a billion-dollar company produce all of its policies in a personal injury lawsuit worth only a few million dollars.

Regarding article 1423, WM avers that by the time the district court issued the Contempt Judgment, it had misapplied the plain meaning of the article. WM contends that article 1423 allows for the partial discovery of insurance policies relevant to a proceeding, not necessarily all policies because the plain language of the statute does not support an interpretation of producing all policies. It avers that there may be several policies under which there is no liability and those must be safeguarded from production.

An interpretation of article 1423 requiring production of all of the relevant policies would also lead to absurd consequences, according to WM, especially

7

because Mr. Thomas has not demonstrated that the value of his claims exceeds $11,000,000. WM alleges that the production of extraneous policies and imposing sanctions is contrary to Louisiana law.

Lastly, WM avers the district court is responsible for safeguarding the discovery process. Consequently, the court should have conducted a balancing test of Mr. Thomas's potential judgment value against the burden of producing policies that may be liable to satisfy all or part of a judgment based upon plain wording of the article. WM asserts that *Sercovich, supra,* calls for a balancing test of factual issues and hardships a discovery order may cause. "An appellate court must balance the information sought in light of the factual issues involved and the hardships that would be caused by the court's order when determining whether the trial court erred in ruling on a discovery order." *Sercovich*, 11-1780, p. 5, 96 So. 3d at 603 (quoting *Wollerson v. Wollerson*, 29,183, p. 2 (La.App. 2 Cir. 1/22/97), 687 So.2d 663, 665).[2]

In the matter *sub judice*, WM maintains that because a balancing test was not performed it should not have to produce all of its relevant policies. Production of all policies, it argues, is an absurd consequence, especially because as a billion-dollar company it has multiple layers of insurance that may not come into play based on the value of Mr. Thomas' claims.

---

[2] In *Sercovich*, a wife sought the production of certain business and tax records for business entities that her husband sold to his sons from a prior marriage, in order to calculate final periodic spousal support. The district court denied a motion to quash filed on behalf of the business entities to stop the production of the requested documents and denied a motion for new trial. *Sercovich*, 11-1780, pp. 2-4, 96 So. 3d at 601-02.

On appeal, this Court recognized that the wife's right to such records under Louisiana's "broadly and liberally construed" discovery statutes was not unlimited because her request involved the production of financial records of a confidential and sensitive nature. Therefore, the matter was remanded to the district court to conduct an *in camera* review of the requested records to determine which records should be produced. *Id.*, 11-1780, pp. 7-8, 96 So. 3d at 604.

La. Code Civ. Proc. art. 1423, entitled *Scope of Discovery; insurance agreements,* provides:

> A party may obtain discovery of the existence and contents of *any* insurance agreement under which any person carrying on an insurance business may be liable *to satisfy part or all of a judgment* which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. [Emphasis added].

The plain wording of the article indicates that the existence and contents of *any* policy under which a party may be liable for all or part of a judgment is discoverable. Additionally, the article contains no requirement that a party seeking the existence and contents of an insurance policy must first establish the value of their claim. Thus, as explained above, the district court's numerous judgments ordering the production of all policies germane to this claim is consistent with the plain meaning of this article. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9. The clear and unambiguous meaning of a law cannot be disregarded. See La. Rev. Stat. 1:4.

The transcript of the January 13, 2020 hearing evidences that the district court, Judge Kevin Conner, explained to counsel for WM that the production of all applicable policies to the instant matter is what had always been ordered and all policies were discoverable because the value of Mr. Thomas's claim cannot be arbitrarily determined by WM or the court itself:

> I'm interested in insurance policies written on behalf of your -- your client. You see, the problem is, people, almost all the case law says he's entitled to get the policies of insurance. It's not up to you or me to dictate to him what is acceptable in terms of the amount

9

of coverage and the amount of damages. That will be shown at trial. My problem is -- And I understand where you're coming from. If Mr. Chanez was standing up here and say, "Okay. It's a 5 million dollar claim and you guys have 10 million in insurance, there's a stipulation in the record that no arguments will be made for blah-blah-blah-blah-blah in terms of any type of exception or exclusion." I believe he might be willing to take the deal.

But I think what he's telling you is at this time he's not sure what the value of his claim is. He's not willing to stipulate to that.

I'm stuck as a Judge, and I think the case law is in his favor in terms of producing these policies. *So I've already ordered them once*, you haven't done it. . .

At the conclusion of the hearing, counsel for WM admitted *he* had an issue with the prior orders of and sought clarification:

Mr. Thompson: Just, again, because *I did have a problem and it's on me*, the Court's Order is all applicable policies that could conceivably provide coverage for this.

The Court: In every case I've dealt with these twenty-something years of private practice, when I asked for a company to give me their policies I meant every one that could possibly provide coverage.

Mr. Thompson: Okay

The Court: Not self-insurance . . . . The ones that are written out that you have a policy on. *I had ordered them previously produced and they haven't been produced. . . .* [Emphasis added].

WM is correct in asserting that discovery has its limits. Discovery is limited, "particularly when justice requires that a party or other person be protected from annoyance, embarrassment, oppression, or undue burden or expense." *Channelside Servs., LLC v. Chrysochoos Grp., Inc.*, 15-0064, pp. 10-11 (La. App. 4 Cir. 5/13/16), 194 So.3d 751, 757–58 (quoting *Stolzle v. Safety & Systems Assur. Consultants, Inc.,* 02-1197, p. 2 (La. 5/24/02), 819 So.2d 287, 289; *see also* La.

10

Code Civ. Proc. art. 1426). Nevertheless, insurance policies are jurisprudentially recognized as being discoverable under article 1423 and WM does not offer any specific legal support for its argument that the interests of justice outweigh a party's right to receive and review applicable insurance policies.

The Louisiana Supreme Court explained that La. Code Civ. Proc. art. 1423, "expressly allows inquiry into the amount of insurance coverage afforded a defendant." *Guy v. Tonglet*, 379 So.2d 744, 746 (La. 1980). Noting that the article was not enacted to permit discovery of all aspects of defendant's financial status, the Supreme Court rationalized that insurance is not classified as an asset because it "is maintained specifically for the purpose of protecting a defendant against litigation; the insurance company ordinarily defends the litigation; and disclosure of the existence of liability insurance does not involve a significant invasion of privacy." *Id.* Thus, while the Supreme Court anticipates some minor invasion of privacy when insurance policies are produced, it recognizes that this information is nevertheless discoverable.

Lastly, in determining sanctions for a party's failure to comply with discovery requests, a district court considers the prejudice to the other party and the willfulness of the noncomplying party. *Richardson v. Amos*, 42,948, p. 4 (La.App. 2 Cir. 3/19/08), 978 So.2d 1184, 1187 (internal citations omitted). WM has blatantly failed to comply over the past three years. It opted initially not to respond to the propounded discovery and thereafter, to only produce policies that were consistent with its valuation of Mr. Thomas' claim.

Furthermore, regarding prejudice to Mr. Thomas, we note "[t]he Louisiana Supreme Court has delineated the 'basic objectives' of the Louisiana discovery process as follows: (1) to afford all parties a fair opportunity to obtain facts

pertinent to litigation; (2) to discover the true facts and compel disclosure of these facts wherever they may be found; (3) to assist litigants in preparing their cases for trial; (4) to narrow and clarify the basic issues between the parties, and; (5) to facilitate and expedite the legal process by encouraging settlement or abandonment of less than meritorious claims." *Sercovich,* 11-1780, p. 5, 96 So.3d at 603 (citing *Hodges v. Southern Farm Bureau Cas. Ins. Co.,* 433 So.2d 125, 129 (La.1983) (citations omitted)). In the instant matter, WM's conduct has obstructed the discovery process for Mr. Thomas over a three- year period because he has not been afforded a fair opportunity to obtain facts pertinent to litigation; has been prevented from discovering true facts; and has been hindered in preparing his case for trial and delayed in potentially settling his claims. Specifically, WM's failure to disclose all relevant insurers, who are potential joint and solidary obligors under Louisiana's Direct Action statute, prevented Mr. Thomas from suing additional defendants and possibly settling this matter. See La. Rev. Stat. 22:1269 (B)(1).[3]

Considering WM's serial noncompliance with the district court's judgments, the deleterious effect failing to comply with article 1423 has had and will have upon Mr. Thomas, and the vast discretion of the district court, we find that there has been no showing that the district court abused its discretion in granting the

---

[3] Mr. Thomas notes that defendants in Louisiana have been sanctioned for withholding the production of insurance policies during discovery. For instance, in *Peterson v. Gibraltar Sav. & Loan, Inc.,* 98-1601, p. 3 (La. 9/3/99), 751 So.2d 820, 822, the Louisiana Supreme Court, on rehearing, remanded a matter to the district court for a contradictory hearing to determine what, if any, sanctions were appropriate for a group of defendants and their attorneys who failed to disclose a $10,000,000 excess policy during discovery. Additionally, in *Dufrene v. Gauthreau Family LLC*, 09-153, pp. 5-6 (La. App. 5 Cir. 11/10/09), 28 So.3d 465, 469, the Fifth Circuit upheld sanctions against an insurer for failing to disclose additional applicable policies until the end of trial. The *Dufrene* court reasoned an award of sanctions against an insurer for failure to deal fairly with claimants did not bar an award of sanctions against insurer for its litigation conduct. *Id.*

Motion for Constructive Contempt, and ordering the production of all applicable insurance policies.

## DECREE

For the foregoing reasons, the January 30, 2020 judgment of the district court, granting Jeremiah Thomas' Motion for Constructive Contempt against Waste Management of Louisiana, LLC d/b/a Waste Management New Orleans Hauling, and awarding Mr. Thomas $1,500 in attorney's fees plus costs, is affirmed.

**AFFIRMED**